Jacquelyn H. Choi (SBN 211560)
RIMON, P.C.
2029 Century Park East, Suite 400N
Los Angeles, California 90067-2905
Telephone: (310) 525-5859
Facsimile: (310) 525-5859
Email: jacquelyn.choi@rimonlaw.com

Attorneys for Plaintiffs, **THE PEOPLE OF THE STATE OF CALIFORNIA**, by and through **GEORGE GASCÓN**, Los Angeles County District Attorney, **COUNTY OF LOS ANGELES and LOS ANGELES COUNTY DEPARTMENT OF PUBLIC HEALTH ACTING AS THE LOCAL ENFORCEMENT AGENCY**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>ANDREA LYNN MURRAY,<br><br>      Debtor. | Case No. 1:21-BK-11781-MT<br><br>Chapter 7<br><br>Adv No. 1:22-AP-01010-MT |
| THE PEOPLE OF THE STATE OF CALIFORNIA, by and through GEORGE GASCON, Los Angeles County District Attorney, COUNTY OF LOS ANGELES and LOS ANGELES COUNTY DEPARTMENT OF PUBLIC HEALTH ACTING AS THE LOCAL ENFORCEMENT AGENCY,<br><br>      Plaintiffs,<br><br>      v.<br><br>ANDREA LYNN MURRAY, and DOES 1-10,,<br><br>      Defendants. | **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF FACTS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAREN GORK IN SUPPORT THEREOF**<br><br>[Plaintiff's [Proposed] Statement of Uncontroverted Facts and Conclusions of Law, Request for Judicial Notice and [Proposed] Summary Judgment Filed Concurrently Herewith]<br><br>Hearing:<br>Date:  June 24, 2025<br>Time: 1:00 p.m.<br>Place: Courtroom 302<br>      United States Bankruptcy Court<br>      21041 Burbank Boulevard<br>      Woodland Hills, CA 91367 |

1  **TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY**

2  **JUDGE, THE DEFENDANT AND ALL PARTIES IN INTEREST:**

3      **PLEASE TAKE NOTICE** that on June 24, 2025 at 1:00 p.m., or as soon thereafter as the

4  matter may be heard, in Courtroom 302 of the United States Bankruptcy Court located at 21041

5  Burbank Boulevard, Woodland Hills, California 91367, Plaintiff Los Angeles County Department

6  of Public Health Acting as the Local Enforcement Agency ("***Plaintiff***" or "***LEA***"), will move and

7  hereby does move for summary judgment, or, in the alternative, summary adjudication of facts (the

8  "***Motion***"), in the above-entitled adversary proceeding pursuant to Rule 56 of the Federal Rules of

9  Civil Procedure, made applicable herein pursuant to Rule 7056 of the Federal Rules of Bankruptcy

10  Procedure.

11      **PLEASE TAKE FURTHER NOTICE** that this Motion is made on the grounds that,

12  among other things, the Plaintiff is hereby entitled to summary judgment on all claims for relief, as

13  alleged in the Plaintiff's *Complaint For: (1) Determination of Non-Dischargeability of Debts*

14  *Pursuant to 11 U.S.C. §§ 523(a)(6) and 523(a)(7)*(the "***Complaint***") filed in the above-captioned

15  adversary proceeding and that there is no genuine issue as to any material fact and therefore the

16  Plaintiff is entitled to judgment as a matter of law.

17      **PLEASE TAKE FURTHER NOTICE** that this Motion is based upon this Notice and

18  Motion, the Declaration of Karen Gork, the Memorandum of Points and Authorities, the Request

19  for Judicial Notice, the [Proposed] Statement of Uncontroverted Facts, the [Proposed] Summary

20  Judgment and the papers and pleadings on file in this case, and such other evidence as may be

21  presented to the Bankruptcy Court.

22      **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 7056-1,

23  any party opposing the relief sought by the Motion must file a response in writing and such response

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1    must be served no later than May 27, 2025 in accordance with Local Bankruptcy Rule 7056-1(c). If

2    you do not oppose the Motion, you need not take further action.

3

4    Dated: May 6, 2025                              **RIMON, P.C.**

5

6                                                    By:    /s/ Jacquelyn H. Choi
                                                            Jacquelyn H. Choi
7                                                    Attorneys for Plaintiff,
                                                     LOS ANGELES COUNTY DEPARTMENT OF PUBLIC
8                                                    HEALTH ACTING AS THE LOCAL ENFORCEMENT
                                                     AGENCY
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ...............................................................................................1

    The Plaintiff, LEA ........................................................................................1

    The Plaintiff, County of Los Angeles ............................................................2

    The Plaintiff, District Attorney ....................................................................3

II. PROCEDURAL POSTURE OF THE BANKRUPTCY CASE..............................4

    A.    The Debtor's Bankruptcy Case ...................................................4

    B.    The Adversary Proceeding ..........................................................4

    C.    Mediation ...................................................................................5

    D.    The Defendant's Criminal Conviction .........................................5

    E.    Stipulated Judgments for Plaintiffs County of Los Angeles and the District Attorney .......................................................................7

III. JURISDICTION ..............................................................................................7

IV. LEGAL ARGUMENT .......................................................................................7

    A.    The Legal Standard for a Motion for Summary Judgment ...........7

    B.    Plaintiff Is Entitled To Summary Judgment On All Claims For Relief As Alleged In The Complaint..............................................9

        1.    The LEA's Penalties Are Excepted From Discharge Under 11 U.S.C. § 523(a)(7) ..............................................9

            (a)    A Fine, Penalty or Forfeiture..............................9

            (b)    Be Payable to and for the Benefit of a Governmental Unit........................................9

            (c)    The Debt Is Not Compensation for Actual Pecuniary Costs ............................................10

        2.    The Defendant's Acts Were Both Willful and Malicious Requiring The LEA's Debt To Be Excepted From Discharge To 11 U.S.C. § 523(a)(6)...............................11

        3.    The Doctrine of Issue Preclusion Prohibits Relitigation of Issues .......................................................................13

            (a)    The Issue Sought to be Precluded is Identical to that Decided in the Prior Proceeding...........14

            (b)    The Issue was Litigated in the Prior Proceeding.................15

(c)    The Issue was Necessarily Decided in the Prior
Proceeding...................................................................15

(d)    The Judgment in the Prior Proceeding is Final and on
the Merits.....................................................................15

(e)    The Party Against Whom Preclusion is Sought is the
Same, or in Privity with, the Party to the Prior
Proceeding. ..................................................................16

V. CONCLUSION ...........................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Albert-Sheridan v. State Bar of California (In re Albert-Sheridan)*,
   960 F.3d 1188 (9th Cir. 2020) .................................................................................. 9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 247 (1986) ........................................................................................ 8

*Cablevision Sys. Corp. v. Cohen (In re Cohen)*,
   121 B.R. 267 (Bankr. E.D.N.Y. 1990) .................................................................... 11

*California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*,
   818 F.2d 1466 (9th Cir. 1987) ................................................................................. 8

*Carrillo v. Su (In re Su)*,
   290 F.3d 1140 (9th Cir. 2002) ................................................................................ 11

*Child v. Foxboro Ranch Estates, LLC (In re Child)*,
   486 B.R. 168 (B.A.P. 9th Cir. 2013) ...................................................................... 14

*Far Out Prods., Inc. v. Oskar*,
   247 F.3d 986 (9th Cir. 2001) .................................................................................. 14

*Gayden v. Nourbakhsh (In re Nourbakhsh)*,
   67 F.3d 798 (9th Cir. 1995) ................................................................................... 14

*Grogan v. Garner*,
   498 U.S. 279 (1991) .............................................................................................. 14

*Harmon v. Kobrin (In re Harmon)*,
   250 F.3d 1240 (9th Cir. 2001) ................................................................................ 14

*Kawaauhau v. Geiger (In re Geiger)*,
   523 U.S. 57 (1998) ................................................................................................ 11

*Kelly v. Robinson*,
   479 U.S. 36 (1986) .................................................................................................. 9

*Lucido v. Super. Ct.*,
   51 Cal.3d 335 (1990) ............................................................................................. 14

*Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................... 8

*Petralia v. Jercich (In re Jercich)*,
   238 F.3d 1202 (9th Cir. 2001) ................................................................................ 13

*Searcy v. Ada County Prosecuting Attorneys Office (In re Searcy)*,
   463 B.R. 888 (B.A.P. 9th Cir. 2012) ...................................................................... 10

vi

*Thiara v. Spycher Bros. (In re Thiara),*
  285 B.R. 420 (B.A.P. 9th Cir. 2002) ................................................................. 13

*Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton),*
  942 F.2d 551 (9th Cir. 1991) ..................................................................... 13, 15

*United States Dept. of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt.
  of Virginia, Inc.,*
  64 F.3d 920 (4th Cir.1995) ........................................................................... 10

*In re Zarzynski,*
  771 F.2d 304 (7th Cir.1985) .......................................................................... 10

**STATUTES**

11 U.S.C. § 101(27) ........................................................................................... 9

11 U.S.C. § 523(a) ........................................................................................... 14

11 U.S.C. § 523(a)(6) .................................................................................... 4, 14

11 U.S.C. § 523(a)(6) ................................................................................ passim

11 U.S.C. § 523(a)(6) .................................................................................... 7, 11

11 U.S.C. § 523(a)(6) ...................................................................................... 11

11 U.S.C. § 523(a)(6) ...................................................................................... 13

11 U.S.C. § 523(a)(7) ................................................................................ passim

11 U.S.C. § 727 ................................................................................................ 4

28 U.S.C. § 157(b) ............................................................................................ 7

28 U.S.C. §157(b)(2)(A), (I) and (O) ................................................................. 7

28 U.S.C. § 1334(b) .......................................................................................... 7

California Code of Regulations Title 14 ............................................................. 1

California Code of Regulations Title 27 ........................................................... 12

California Public Resources Code § 43209 .................................................. 1, 10

California Public Resources Code § 44000.5 ..................................................... 1

California Public Resources Code § 44002 ........................................................ 1

California Public Resources Code § 45000 .................................................. 1, 10

California Public Resources Code § 45011 ................................................... 2, 9

California Public Resources Code § 45016 ........................................................ 2

California Public Resources Code § 45040(a) ................................................................ 2

**<u>RULES</u>**

Federal Rules of Bankruptcy Procedure Rule 7056 ...................................................... 7

Federal Rules of Bankruptcy Procedure Rule 7056(f) ............................................... 16

Federal Rules of Civil Procedure Rule 56 ..................................................................... 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## __INTRODUCTION__

_The Plaintiff, LEA_

On June 1, 2017, the LEA received a complaint regarding illegal dumping at 12051 Browns Canyon Road, Chatsworth, California, a 13.3 acre property located in Oat Mountain which area is often referred to as Browns Canyon (the "***Property***") and co-owned by the Defendant and her ex-boyfriend.[1]  The LEA's inspection on June 2, 2017, revealed piles of construction and demolition ("***C&D***") material throughout the Property, in violation of Public Resources Code §§ 44000.5 and 44002, which require every operator of a solid waste facility to acquire a solid waste facilities permit. A Notice of Violation ("***NOV***") was issued to the Property owners on June 6, 2017 for illegal disposal of C&D material which directed them to remove the C&D material from the Property and properly dispose of it.  *See* Declaration of Karen Gork (the "***Gork Decl.***"), ¶ 3, Exhibits "A", "G" (p. 5) and Exhibit "H" (p. 2) attached thereto.

The LEA inspected the Property on June 28, 2017, July 5, 2017, and October 12, 2017 and observed piles of C&D materials on the Property.  Thus, a *Cease and Desist and Corrective Action Order* ("***Cease and Desist Order***") was issued on January 12, 2018, directing the owners to immediately cease the import of all solid waste, and remove within thirty (30) days, all of the C&D material from the Property to a permitted solid waste facility and provide receipts to LEA to document the proper removal of such C&D material.  *See* Gork Decl., Decl., ¶ 4, Exhibit "B", Exhibit "G" (p. 5) and Exhibit "H" (p. 2) attached thereto.

The Defendant requested a hearing to appeal the Cease and Desist Order.  The hearing was held by the Los Angeles County Solid Waste Facilities Hearing Board (the "***Hearing Board***").  By *Decision and Order* issued on November 9, 2018, the Hearing Board concluded that the LEA acted

---

[1]  The LEA is certified by the California Department of Resources Recycling and Recovery ("***CalRecycle***") and authorized by Division 30 of the California Public Resources Code §§ 43209 and 45000, and Title 14 of the California Code of Regulations to enforce applicable solid waste regulations within the County of Los Angeles.

1    in accordance with the applicable law and regulation in the issuance of the Cease and Desist Order.

2    *See* Gork Decl., ¶ 5, Exhibit "C", Exhibit "G" (p. 5) and Exhibit "H" (p. 3) attached thereto.

3    The Defendant subsequently appealed that finding to the State of California's

4    Department of Resources Recycling and Recovery ("***CalRecycle***"), which duty is to enforce

5    state laws and regulations concerning solid waste sites within its jurisdiction and to restore,

6    enhance and protect the environment and to ensure public health, environmental quality and

7    economic vitality.  On October 4, 2023, the CalRecycle hearing officer upheld, in full, the Cease

8    and Desist Order. The Defendant did not appeal the CalRecycle Hearing Officer's determination,

9    and that decision is now final.  *See* Gork Decl., ¶ 7, Exhibit "D", Exhibit "G" (p. 6) and Exhibit "H"

10    (p. 3) attached thereto; *see also* California Public Resources Code § 45040(a).

11    Pursuant to California Public Resources Code § 45011, the LEA has the authority to impose

12    administrative penalties for the Defendant's violation of the Cease and Desist Order at a rate of up

13    to $5,000.00 per day, beginning on February 12, 2018 to the present because the violations have not

14    been abated.  Based on certain mitigating factors to be considered, the LEA has determined that

15    penalties should be imposed at a rate of $4,500.00 per day.  *See* Gork Decl., ¶ 8; *see also, California*

16    *Public Resources Code §* 45016.  Since LEA's Cease and Desist Order was entered on January 12,

17    2018, and the Defendant's compliance was required within thirty (30) calendar days (by February

18    11, 2018), penalties started accruing on February 12, 2018.  As of the Petition Date, the accrued

19    penalties total $6,088,500.00 for 1,353 days in violation of the Cease and Desist Order.  As of the

20    date of the filing of this Motion, the accrued penalties will total not less than $11,907,000.00 for

21    2,646 days out of compliance with the Cease and Desist Order.  Such penalties continue to accrue

22    daily until Defendant's abatement of the violation.  *See* Gork Decl.,  ¶ 9.

23    <u>*The Plaintiff, County of Los Angeles*</u>

24    In 2017, plaintiff County of Los Angeles also issued the Debtor several notices ordering

25    her to abate her violations of the California Zoning Code.  *See Request for Judicial Notice* filed

26    concurrently herewith ("***RFJN***"), Exhibit "8", Exhibits ""E" through "L" attached thereto.  In

27    short, the Defendant was ordered to stop all commercial waste dumping and submit permit

28    applications to the County of Los Angeles but Defendant refused to comply and never submitted

1    permit applications, engineered grading plans, site plans, soil testing, soil reports, hydrology

2    reports for plan review and permits. Instead, the Defendant continued to illegally dump C&D

3    material and waste on the Property.  *See Id.*

4    *The Plaintiff, District Attorney*

5        On November 18, 2018, plaintiff Los Angeles County District Attorney's Office (the

6    "**District Attorney**") obtained an inspection warrant and conducted a full inspection on the Property.

7    *See* RFJN, Exhibit "5", p. 9, lns. 12-13.  On February 15, 2019, the District Attorney commenced a

8    criminal action against the Defendant asserting twelve (12) misdemeanor counts for building,

9    grading, electrical and zoning code violations on Defendant's Property in the Los Angeles County

10    Superior Court for the State of California (Case No. SC05143) (the "**Criminal Action**").  *See* RFJN,

11    Exhibit "4".  In short, the District Attorney alleged that Defendant unlawfully used her Property as

12    an unpermitted dumpsite for construction waste and debris, instead of using a lawful landfill.  *See*

13    RFJN, Exhibit "4", p. 2.  The District Attorney further alleged additional land use violations of

14    maintaining unpermitted accessory structures exceeding 120 square feet, unpermitted electrical,

15    maintaining junk and salvage, and unlawful oak tree encroachment.  *See Id.*

16        On May 25, 2022, the criminal court dismissed four (4) counts against the Defendant and

17    held that the District Attorney could retry Count 1 (*Unpermitted Grading*), Count 4 (*Improperly*

18    *Placing Fill Material*), and Count 8 (*Unlawful Land Use - Unpermitted Solid Fill Project*).  *See*

19    RFJN, Exhibit "6".  On November 3, 2022, after a retrial took place in the Criminal Action, the

20    jury reached verdicts finding the Defendant guilty of misdemeanor Counts 1 (*Unpermitted Grading*)

21    and 4 (*Improperly Placing Fill Material*).[2]  *See* RFJN, Exhibit "7"; *see also,* Gork Decl., Exhibit

22    "G" (p. 6) and Exhibit "H" (p. 3) attached thereto.  On December 8, 2022, the criminal court

23    sentenced the Defendant on both convictions by imposing fines and/or community labor.  *See* RFJN,

24    Exhibit "7"; *see also,* Gork Decl., Exhibit "G" (p. 6) and ¶ 20, Exhibit "H" (p. 3) attached thereto.

25        On December 16, 2022, the Defendant appealed the decision rendered in the Criminal

26    Action.  *See* RFJN, Exhibit "17" attached thereto.  However, on November 6, 2024, the appellate

27    _____

28    [2]   The District Attorney requested a dismissal of Count 8 (*Unlawful Land Use - Unpermitted Solid Fill Project*) and this count was dismissed.  *See* RFJN, Exhibit "7".

3

1    court entered an *Order* dismissing the criminal appeal because it was taken from a "non-appealable

2    judgment". *See* RFJN, Exhibit "18" attached thereto.

3         Although all County and State departments provided the Defendant with multiple

4    opportunities to comply and obey the laws, the Defendant continued to receive solid waste on her

5    Property without requisite permits.  Why would the Defendant continue to operate a solid waste

6    disposal without county and State code compliance?  As the District Attorney asserted in the

7    Criminal Action, the answer is simple:  It was extremely lucrative to operate an unpermitted solid

8    waste facility without permits, oversight and accountability.   The District Attorney argued that the

9    Defendant likely accepted payments from truckers and construction companies under the table to

10   provide a more inexpensive alternative to waste disposal than disposing such waste at a more costly

11   lawfully permitted landfill. *See* RFJN, Exhibit "5", p. 12.  It appears that the financial incentives to

12   turn a blind eye to the multiple notices of code violations issued by the County of Los Angeles and

13   the LEA's Cease and Desist Order were simply too tempting for the Defendant.

14        Based on the facts and circumstances of this case, (i) the Defendant's acts were both

15   willful and malicious requiring the LEA's debt to be excepted from discharge pursuant to

16   Section 523(a)(6) of the Bankruptcy Code; and (ii) the accruing penalties owed by the Defendant

17   to the LEA, as a governmental unit, should be excepted from discharge under Section 523(a)(7)

18   of the Bankruptcy Code.  Accordingly, the Plaintiff is entitled to judgment as a matter of law on

19   each of its claims for relief as set forth in the Complaint.

20                                            **II.**

21                        **PROCEDURAL POSTURE OF THE BANKRUPTCY CASE**

22   **A.    The Debtor's Bankruptcy Case**

23        1.    On October 27, 2021 (the "***Petition Date***"), the Defendant filed for chapter 7

24   bankruptcy. *See* RFJN, Exhibit "1".  On February 14, 2022, the Debtor received a discharge under

25   11 U.S.C. § 727 and the Debtor's bankruptcy case was closed and declared a no-asset case. *See*

26   RFJN, Exhibits "2" through "3".

27   **B.    The Adversary Proceeding**

28        2.    On February 4, 2022, the LEA, the District Attorney and the County of Los

                                            4

Angeles commenced the above-captioned adversary proceeding by filing a *Complaint for Determination of Debts Pursuant to 11 U.S.C. § 523(a)(6) and 523(a)(7)* (the "**Complaint**") [Adv. Docket No. 1]. *See* RFJN, Exhibit "8". On March 8, 2022, the Defendant answered the Complaint [Adv. Docket No. 6]. *See* RFJN, Exhibit "9".

3. On June 28, 2022, this Court entered an *Order Assigning Matter to Mediation Program and Appointing Mediator and Alternate Mediator* [Adv. Docket No. 13]. *See* RFJN, Exhibit "10".

**C.    Mediation**

4. On November 30, 2023, the LEA and Defendant participated in mediation before Mediator, Sandra J. Coleman, Esq. (the "**Mediator**"). The mediation was unsuccessful but the parties participated in a continued mediation on July 2, 2024 with the Mediator and Patrick Flannery ("**Flannery**"), the co-owner of the real property and his counsel. Although the continued mediation did not result in settlement, all parties agreed to participate in a further continued mediation on July 29, 2024 which was similarly unsuccessful. *See* Gork Decl., ¶ 10.

**D.    The Defendant's Criminal Conviction**

5. As set forth above, prior to the Petition Date, the District Attorney commenced a criminal action against the Defendant asserting twelve (12) misdemeanor counts for building, grading, electrical and zoning code violations on Defendant's Property in the Los Angeles County Superior Court for the State of California (Case No. SC05143) (the "**Criminal Action**"). *See* RFJN, Exhibit "4". On May 25, 2022, the criminal court dismissed four (4) counts against the Defendant and held that the District Attorney could retry Count 1 (*Unpermitted Grading*), Count 4 (*Improperly Placing Fill Material*), and Count 8 (*Unlawful Land Use - Unpermitted Solid Fill Project*). *See* RFJN, Exhibit "6".

6. On November 3, 3022, after a retrial took place in the Criminal Action, the jury reached verdicts finding the Defendant guilty of misdemeanor Counts 1 (*Unpermitted Grading*) and 4 (*Improperly Placing Fill Material*). *See* RFJN, Exhibit "7".

   *Count 1*

7. With respect to Count 1, the District Attorney's trial brief stated that in order to

convict the Defendant concerning the crime of "*unpermitted grading*", the District Attorney must prove the following elements:

(1)     "On or between February 12, 2018 and November 28, 2018;

(2)     The defendant ***willfully and unlawfully*** graded property (emphasis added);[3]

(3)     Without obtaining a permit from the Los Angeles County Department of Public Works; [and]

(4)     On premises located at 12051 Browns Canyon, Chatsworth, CA 91311, in the unincorporated [C]ounty of Los Angeles.

*See* RFJN, Exhibit "5", p. 22.

### *Count 4*

8.      With respect to Count 4, the District Attorney's trial brief disclosed that in order to convict the Defendant concerning the crime involving "*improperly placing fill material*", the District Attorney must prove that:

(1)     "On or between February 12, 2018 and November 28, 2018;

(2)     The defendant ***willfully and unlawfully*** failed to comply with fill

requirements by placing unsuitable fill material on the subject property without approval from the Los Angeles County Department of Public Works (emphasis added); [and] [4]

(3)     On premises located at 12051 Browns Canyon, Chatsworth, CA 91311, in the unincorporated [C]ounty of Los Angeles.

*See* RFJN, Exhibit "5", p. 22.

9.      On December 8, 2022, the criminal court sentenced the Defendant on ***both*** convictions by imposing various fines and/or community labor.  *See* RFJN, Exhibit "7".

10.     On December 16, 2022, the Defendant filed a Notice of Appeal in the Criminal Action.  *See* RFJN, Exhibit "17" attached thereto.  However, on November 6, 2024, the appellate court entered an *Order* dismissing the criminal appeal because it was taken from a "non-

---

[3] Grading is defined as an excavation or fill or a combination thereof.

[4] "Unsuitable fill material" is defined as material that includes organic, frozen or other deleterious materials.

1  appealable judgment".  *See* RFJN, Exhibit "18" attached thereto.

2  **E.      Stipulated Judgments for Plaintiffs County of Los Angeles and the District Attorney**

3            11.      On February 28, 2023, the County and the Defendant filed a stipulation for the

4  entry of judgment related to the County's non-dischargeable debt in the above-captioned adversary

5  proceeding in the total sum of $9,245.90 under Sections 523(a)(6) and 523(a)(7) of the

6  Bankruptcy Code.  *See* RFJN, Exhibit "11".  On March 1, 2023, the Court entered an order

7  granting the County's Stipulation.  *See* RFJN, Exhibit "12".  On March 23, 2023, the Court

8  entered the County's judgment.  *See* RFJN, Exhibit "13".

9            12.      Similarly, on April 3, 2023, the District Attorney and the Defendant filed a

10  stipulation for the entry of judgment related to the People's non-dischargeable debt in the total

11  sum of $4,390.00 under Sections 523(a)(6) and 523(a)(7) of the Bankruptcy Code.  *See* RFJN,

12  Exhibit "14".  On April 4, 2023, the Court entered an order granting the People's Stipulation and

13  on the same day, the Court entered the People's judgment.  *See* RFJN, Exhibits "15" through "16".

14                                           **III.**

15                                   **JURISDICTION**

16            13.      This Court possesses jurisdiction over this adversary proceeding as asserted in the

17  Complaint and admitted to in the Answer.  *See* RFJN, Exhibit "8" ¶ 1; *see also,* RFJN, Exhibit "9"

18  ¶ 1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)

19  and 1334(b).

20            14.      This action is a core proceeding under 28 U.S.C. §157(b)(2)(A), (I) and (O).  This

21  adversary proceeding arises under, arises in and is related to the bankruptcy case of *In re Andrea*

22  *Lynn Murray* which was commenced on October 27, 2021 (bearing case no. 1:21-bk-11781-MT).

23  *See* RFJN, Exhibit "1".

24                                           **IV.**

25                                   **LEGAL ARGUMENT**

26  **A.      The Legal Standard for a Motion for Summary Judgment**

27            Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings

28  pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary

1    judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

2    admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

3    any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v.*

4    *Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "By its very terms, this standard provides that the

5    mere existence of some alleged factual dispute between the parties will not defeat an otherwise

6    properly supported motion for summary judgment; the requirement is that there be no genuine

7    issue of material fact".  *Anderson,* 477 U.S. 242 at 247-48.

8        To overcome a summary judgment motion, the opposing party must show that there are

9    "genuine factual issues that properly can be resolved only by a finder of fact because they may

10   reasonably be resolved in favor of either party." *Id*. at 250.  More importantly, "[i]f the factual

11   context makes the non-moving party's claim implausible, that party must come forward with more

12   persuasive evidence than would otherwise be necessary to show that there is a genuine

13   issue for trial."  *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818

14   F.2d 1466, 1468 (9th Cir. 1987), citing *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475

15   U.S. 574 (1986). As the *Franciscan Ceramics* court observed, "No longer can it be argued that

16   any disagreement about a material issue of fact precludes the issue of summary judgment."

17   *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics*, *Inc.,* 818 F.2d at 1468.

18       As stated by the Supreme Court:

19       When the moving party has carried its burden under Rule 56(c), its opponent must
         do something more than simply show that there is some metaphysical doubt as to the
20       material facts (citations omitted).   In the language of the Rule, the non-moving party
         must come forward 'with specific facts showing that there is a *genuine* issue for trial.'
21       . . . Where the record as a whole could not lead a rational trier of fact to find for the
         non-moving party, there is no 'genuine issue for trial'.
22

23   *Matsushita Elec. Industries Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citation

24   omitted).

25       Thus, the Defendant must come forward with plausible evidence relative to the issues of

26   fact or show that the LEA is not entitled to judgment as a matter of law in order to defend against

27   this Motion.  However, the Defendant will not be able to meet this burden.  Thus, the LEA seeks

28   summary adjudication that Debtor's pre-petition debt to Plaintiff, in the amount of $6,088,500.00

8

1    (plus further penalties at a rate of $4,500.00 per day until the violations are abated), be excepted

2    from Debtor's discharge pursuant to Sections 523(a)(6) and 523(a)(7) of the Bankruptcy Code.

3    The evidence reveals that there are no genuine issues as to any of these material facts and that the

4    LEA is entitled to judgment as a matter of law.

5    **B.      Plaintiff Is Entitled To Summary Judgment On All Claims For Relief As Alleged In
          The Complaint**

6

7        1.   <u>The LEA's Penalties Are Excepted From Discharge Under 11 U.S.C. § 523(a)(7)</u>

8            11 U.S.C. § 523(a)(7) provides in material part, that:
          (a)      A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or
                   1328(b) of this title does not discharge an individual debtor from
9                  any debt—

10                     (7)      to the extent such debt is for a fine, penalty, or forfeiture
                               payable to and for the benefit of a governmental unit, and
11                             is not compensation for actual pecuniary loss, other than
                               a tax penalty— . . .

12

13            "Section 523(a)(7) expressly requires three elements for a debt to be non-dischargeable.

14    The debt must (1) be a fine, penalty, or forfeiture; (2) be payable to and for the benefit of a

15    governmental unit; and (3) not constitute compensation for actual pecuniary costs".  *Albert-*

16    *Sheridan v. State Bar of California (In re Albert-Sheridan),* 960 F.3d 1188, 1193 (9th Cir. 2020).

17    With regard to the first factor (namely, a fine, penalty or forfeiture), the Supreme Court in *Kelly v.*

18    *Robinson,* 479 U.S. 36, 51 (1986) concluded that Section 523(a)(7) "creates a broad exception for

19    all penal sanctions, whether they be denominated fines, penalties, or forfeitures".

20                     *(a)      A Fine, Penalty or Forfeiture*

21            As set forth above, the LEA is entitled to "penalties" under applicable state law as a direct

22    result of the Defendant's violations under the Cease and Desist Order which was upheld on appeal.

23    *See* Gork Decl., ¶ 7, Exhibit "D" attached thereto; *see also,* California Public Resources Code §

24    45011.  Therefore, the first factor is satisfied.

25                     *(b)      Be Payable to and for the Benefit of a Governmental Unit*

26            With regard to the second element, under Section 101(27) of the Bankruptcy Code, the

27    terms "governmental unit" are defined as the "*United States; State; Commonwealth; District;*

28    *Territory; municipality; foreign state; department, agency, or instrumentality of the United States*

9

1    *(but not a United States trustee while serving as a trustee in a case under this title), a State, a*

2    *Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or*

3    *domestic government*".  The LEA is certified by CalRecycle and authorized by Division 30 of the

4    California Public Resources Code §§ 43209 and 45000, and Title 14 of the California Code of

5    Regulations to enforce applicable solid waste regulations within the County of Los Angeles. Thus,

6    there can be no dispute that the LEA is a "governmental unit" for purposes of Section 523(a)(7).

7    *See* Gork Decl., ¶ 11.  Therefore, the second element is satisfied.

8                           *(c)*    <u>*The Debt Is Not Compensation for Actual Pecuniary Costs*</u>

9           Third, the Defendant's debt, which is comprised of penalties owed to the LEA, does not

10    constitute "*compensation for actual pecuniary loss*", as the imposed penalties do not serve a

11    compensatory purpose but rather, its primary purpose is punitive.  The LEA's penalties do not, under

12    any circumstances, serve to advance the LEA's pecuniary interests, but rather, to benefit the public

13    welfare by penalizing the Defendant's past unlawful conduct and deter future wrongdoing. Based

14    thereon, the LEA's damages comprised of fines and penalties do not constitute "compensation for

15    actual pecuniary loss", as those terms are described in Section 523(a)(7) of the Bankruptcy Code.

16    *See* Gork Decl., ¶ 12.

17           Moreover, even if the debt owed to the LEA consisted of reimbursement of costs and

18    attorneys' fees — which it does not — courts have held that reimbursement of costs and attorney's

19    fees to governmental entities is merely incidental to its primary purpose and thus not dischargeable.

20    *See e.g., Searcy v. Ada County Prosecuting Attorneys Office (In re Searcy),* 463 B.R. 888, 895

21    (B.A.P. 9th Cir. 2012); *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985) (holding that costs incurred

22    by the county in the criminal trial can be viewed a part of the penalty).  In fact, "[t]he Supreme Court

23    has given § 523(a)(7) a broad reading, and has held that it applies to all criminal and civil penalties,

24    even those designed to provide restitution to injured private citizens".  *United States Dept. of Hous.*

25    *& Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.,* 64 F.3d 920, 928 (4th

26    Cir.1995) (citation omitted).

27           Accordingly, the LEA has satisfied the three (3) requisite elements and Defendant's entire

28    penalty debt owed to the LEA should be excepted from discharge under Section 523(a)(7) of the

1    Bankruptcy Code.

2        2.  <u>The Defendant's Acts Were Both Willful and Malicious Requiring The LEA's Debt To
Be Excepted From Discharge Pursuant To 11 U.S.C. § 523(a)(6)</u>

3

4    11 U.S.C. § 523(a)(6) provides that:

5          A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of
this title does not discharge an individual debtor from any debt—

6          (6)    for willful and malicious injury by the debtor to another
entity or to the property of another entity.

7

8        Section 523(a)(6) prevents a discharge "for willful and malicious injury by the debtor to

9    another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  The Supreme Court in

10    *Kawaauhau v. Geiger (In re Geiger),* 523 U.S. 57, 58 (1998), made clear that for Section

11    523(a)(6) to apply, the actor must intend the consequences of the act, not simply the act itself.

12    Both "willfulness" and "maliciousness" must be proven to block discharge under Section

13    523(a)(6).  In the Ninth Circuit, "§ 523(a)(6)'s willful injury requirement is met only when the

14    debtor has a subjective motive to inflict injury or when the debtor believes that injury is

15    substantially certain to result from his own conduct." *Carrillo v. Su (In re Su),* 290 F.3d 1140,

16    1142 (9th Cir. 2002).

17        In this case, the record reflects that the Defendant admitted depositing substantial amounts

18    of construction debris on the Property, including broken concrete, broken bricks and broken rocks.

19    Such material is considered "solid waste" which is subject to regulation by the LEA.  The

20    Defendant is charged with the knowledge of the natural consequences of her actions. *See*

21    *Cablevision Sys. Corp. v. Cohen (In re Cohen),* 121 B.R. 267, 271 (Bankr. E.D.N.Y. 1990*); see*

22    *also, In re Su,* 290 F.3d at 1146 ("[i]n addition to what a debtor may admit to knowing, the

23    bankruptcy court may consider circumstantial evidence that tends to establish what the debtor

24    must have actually known when taking the injury-producing action").

25        Here, the Defendant must have known that injury to another entity or to the property of

26    another entity was substantially certain to occur as a result of her illegal conduct. Specifically, the

27    LEA's records reflect that at least one complainant contacted the County of Los Angeles

28    complaining of the Defendant's illegal operation.  *See* Gork Decl., ¶13.  Dumped waste that

11

1  includes C&D material can be deleterious to public health and safety and the environment if it

2  contains asbestos or other hazardous materials.  The Defendant does not possess and has never

3  produced documentation identifying the origin or content of the materials on the Property.  *See*

4  Gork Decl., Exhibit "F" at p. 23:12-14.

5          As a result of the conduct of Defendant, the Property is now considered a "Closed, Illegal,

6  or Abandoned (CIA) Landfill" subject to the requirements in Title 27 of the California Code of

7  Regulations (CCR) to meet State Minimum Standards for closed landfills.  *See* Gork Decl., ¶ 14.

8  In connection with Defendant's unsuccessful appeal of the Cease and Desist Order, expert Lisa

9  Naslund had previously testified to the Hearing Board that Defendant's Property "*drains to*

10  *adjacent properties*" and is not "*self-contained*" and as such, the Defendant's Property affects

11  "*adjacent properties*".  *See* Gork Decl., Exhibit "E", p. 67:17-21.  By engaging in the illegal

12  operation of the Defendant's unpermitted solid waste disposal over an extended period of time and

13  failing to take corrective action, the Defendant caused damage to the land in the unincorporated

14  community of Oat Mountain, and by violating the Cease and Desist Order issued by the LEA, the

15  Defendant caused damage to the public health and safety and the environment. *See* Gork Decl.,¶

16  14.

17          Moreover, at the Defendant's 341(a) creditors' meeting, the Defendant admitted under oath

18  that she continued bringing materials onto the Property ***after*** the LEA issued the NOV directing

19  her to cease and remove the materials (*i.e.,* Defendant knowingly, willfully and maliciously

20  continued violating the law after she was specifically instructed to cease), as follows:

21          **Q.**      So the LEA, my client, issued a notice of violation to you as the property
             owner of the Browns Canyon property on June 6th of 2017 for illegal disposal of
22          construction and demolition materials, correct?

23                    *        *        *

24          **A.**      2017. Yes, I believe that's correct.

25          **Q.**      And the notice of violation directed you to remove the construction and
             demolition material from the property and properly dispose of it, is that correct?
26          **A.**      Yes.

27          **Q.**      Did you remove those materials?

28                    *        *        *

12

1    **A.**    It's a no . . .

2         *    *    *

3    **Q**.    In fact, you continued to import additional materials after the June 6, 2017
notice of violation, is that correct?

4    **A.**    Yes. . . .

5

*See* Gork Decl., Exhibit "F", pp. 29-30.

6

7    By the Defendant's actual and implied knowledge of her continuous unlawful and illegal

solid waste disposal operations without requisite licenses and permits, the Debtor acted willfully

8    and maliciously to injure "another entity or to the property of another entity". *See* Gork Decl., ¶

9    15.

10    In addition, malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which

11    necessarily causes injury, and (4) is done without just cause or excuse." *Petralia v. Jercich (In re

12    Jercich),* 238 F.3d 1202, 1209 (9th Cir. 2001) (internal citations omitted).  Malice may be inferred

13    based on the nature of the wrongful act.  *See Transamerica Commercial Fin. Corp. v. Littleton (In

14    re Littleton),* 942 F.2d 551, 554 (9th Cir. 1991).  However, malice under Section 523(a)(6) does

15    not require a showing of biblical malice, *i.e.,* personal hatred, spite, or ill-will.  *See Thiara v.

16    Spycher Bros. (In re Thiara),* 285 B.R. 420, 434 (B.A.P. 9th Cir. 2002).  Clearly, based on the the

17    totality of circumstances presented in this case, malice can be inferred from the Defendant's

18    wrongful conduct of engaging in Defendant's illegal operations.

19    Most importantly, in the Criminal Action, the District Attorney proved that the Defendant

20    acted "***willfully and unlawfully***" in order to convict the Defendant under Count 1 (*Unpermitted

21    Grading*) and Count 4 (*Improperly Placing Fill Material*) and the jury convicted Defendant on

22    both counts.  *See* RFJN, Exhibit "5", p. 22; *see also,* RFJN, Exhibit "7".  Accordingly, the LEA is

23    similarly entitled to have any and all of Defendant's debt for LEA penalties determined

24    nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as a direct result of the Defendant's "willful

25    and malicious" injury.

26    3.    The Doctrine of Issue Preclusion Prohibits Relitigation of Issues

27    The LEA believes that it independently satisfies each of the elements set forth above under

28

13

1    Section 523(a)(6) of the Bankruptcy Code.  Moreover, the doctrine of issue preclusion

2  prohibits relitigation of issues adjudicated in a prior action.  *See Child v. Foxboro Ranch Estates,*

3  *LLC (In re Child),* 486 B.R. 168, 172 (B.A.P. 9th Cir. 2013).  Cases have suggested that issue

4  preclusion applies in exception to discharge proceedings.  *See Grogan v. Garner*, 498 U.S. 279, 284

5  n.11 (1991) (preclusion principles apply in discharge exception proceedings under section 523(a) to

6  preclude relitigation of state court findings relevant to the dischargeability determination).  "Under

7  the federal full faith and credit statute, federal courts must give state court judgments the preclusive

8  effect that those judgments would enjoy under the law of the state in which the judgment was

9  rendered".  *See Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001); *see also*, *Gayden*

10  *v. Nourbakhsh (In re Nourbakhsh),* 67 F.3d 798, 800 (9th Cir. 1995).

11    Under California law, issue preclusion bars relitigation of an issue if: (1) the issue sought to

12  be precluded is identical to that decided in the prior proceeding; (2) the issue was actually litigated

13  in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) the

14  judgment in the prior proceeding is final and on the merits; and (5) the party against whom

15  preclusion is sought is the same, or in privity with, the party to the prior proceeding.  *See Harmon*

16  *v. Kobrin (In re Harmon),* 250 F.3d 1240, 1245 (9th Cir. 2001) (citing *Lucido v. Super. Ct.,* 51

17  Cal.3d 335, 341 (1990)).  In addition to meeting these threshold requirements, a California court

18  may apply issue preclusion only if doing so furthers the underlying public policies of preservation

19  of the integrity of the judicial system, promotion of judicial economy, and the protection of litigants

20  from harassment by vexatious litigation.  *See Lucido,* 51 Cal.3d at 342-43.

21    In the circumstances of this case, all five (5) of the elements for application of issue

22  preclusion to this adversary proceeding are satisfied as set forth below:

23    (a)    *The Issue Sought to be Precluded is Identical to that Decided in the Prior*
       *Proceeding*
24

25    Under Section 523(a)(6), the LEA must prove that the Defendant caused "willful and

26  malicious" injury.  As set forth above, in the Criminal Action, the Defendant was convicted on

27  both Count 1 (*Unpermitted Grading*) and Count 4 (*Improperly Placing Fill Material*) after the

28  District Attorney argued, among other things, that the Defendant acted "*willfully and unlawfully*"

on both counts.  *See* RFJN, Exhibit "6".  Again, malice may be inferred based on the nature of the wrongful act.  *See Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton),* 942 F.2d 551, 554 (9th Cir. 1991).  Therefore, the first element is satisfied.

### (b)    *The Issue was Litigated in the Prior Proceeding*

The Defendant appealed the issuance of the LEA's Cease and Desist Order not once but twice and was unsuccessful in both appeals.  *See* Gork Decl., Exhibits "C" through "D".  Moreover, in the Criminal Action, the District Attorney's jury instructions stated that in order to convict the Defendant under Count 1 concerning the crime of "*unpermitted grading*", the District Attorney must prove, among other elements, the element that the Defendant acted ***willfully and unlawfully*** graded property.  *See* RFJN, Exhibit "5", p. 22.  The jury found the Defendant guilty of this illegal crime.  *See* RFJN, Exhibit "7".

Similarly, under Count 4 concerning the crime of "*improperly placing fill material*", the District Attorney successfully proved that the Defendant acted ***willfully and unlawfully*** by failing to comply with "fill" requirements by placing unsuitable fill material on the subject Property without approval from the County of Los Angeles.  *See* RFJN, Exhibit "5", p. 22; *see also,* RFJN, Exhibit "7".  Thus, the issue as to whether or not the Defendant caused willful and malicious injury was litigated in the Criminal Action and the second element is satisfied.

### (c)    *The Issue was Necessarily Decided in the Prior Proceeding*

Similar to the second element set forth above, the issue as to whether or not the  Defendant caused willful and malicious injury to another entity or to the property of another entity was necessarily decided in the Criminal Action based upon the District Attorney's jury instructions and the subsequent conviction.  *See* RFJN, Exhibit "5", p. 22 and Exhibit "7".  Therefore, the third element is satisfied.

### (d)    *The Judgment in the Prior Proceeding is Final and on the Merits*

On November 3, 2022, after a retrial took place in the Criminal Action, the jury reached a final verdicts finding the Defendant guilty of misdemeanor Count 1 (*Unpermitted Grading*) and Count 4 (*Improperly Placing Fill Material*).  *See* RFJN, Exhibit "7".

Although Defendant appealed the verdicts, the appellate court entered an *Order* dismissing

1    the criminal appeal because it was taken from a "non-appealable judgment". *See* RFJN, Exhibits

2    "17 through 18" attached thereto. Thus, the judgment in the prior proceeding is final and on the

3    merits and the fourth element is satisfied.

4             (e)    *The Party Against Whom Preclusion is Sought is the Same, or in Privity*
      *with, the Party to the Prior Proceeding.*

5

6         The District Attorney prosecuted the Criminal Action based upon the allegations and

7    evidence obtained and presented by co-plaintiffs, the County of Los Angeles and the LEA. *See*

8    RFJN, Exhibits "4" through "5". Accordingly, the LEA believes it is in privity with the party to the

9    prior proceeding and the fifth and final element is satisfied.

10   **V.**

11   **CONCLUSION**

12        Based upon the foregoing reasons, the LEA respectfully requests that:

13        (i)    the Court enter summary judgment in favor of the LEA in that the entire pre-

14   petition debt owed to the LEA is excepted from discharge in an amount not less than

15   $6,088,500.00 which accrues further penalties at a rate of $4,500.00 per day from the Petition Date

16   until the violations are abated by Defendant (which amount may be increased by reasonable

17   attorneys' fees and costs incurred by Plaintiff in this adversary proceeding and presented to by

18   way of a subsequent motion); or, in the alternative,

19        (ii)    the Court enter an order determining material facts genuinely not in issue, as

20   provided under Rule 7056(f) of the Federal Rules of Bankruptcy Procedure.

21   Dated: May 6, 2025    **RIMON, P.C.**

22

23                By:    _____/s/ Jacquelyn H. Choi_____

24                     Jacquelyn H. Choi
                        Attorneys for Plaintiff,

25                     LOS ANGELES COUNTY DEPARTMENT OF
                        PUBLIC HEALTH ACTING AS THE LOCAL

26                     ENFORCEMENT AGENCY

27

28

## DECLARATION OF KAREN GORK

I, Karen Gork, declare as follows:

1.      I am a Chief Environmental Health Specialist for the Solid Waste Management Program for the Los Angeles County Department of Public Health, Solid Waste Management Program, Acting as the Local Enforcement Agency (the "*LEA*").[5]  I have been employed by the LEA since March 1, 2020.  I have held the position of Chief Environmental Health Specialist since February 14, 2022.  I submit this declaration in support of the *Motion for Summary Judgment Or, In the Alternative, Summary Adjudication of Facts* (the "*Motion*") filed in the bankruptcy case of *In re Andrea L. Murray* (the "*Debtor*" or "*Defendant*").

2.      I have custody and control of the LEA's business records and documents relating to this matter.  To the best of my knowledge, those records were prepared in the ordinary course of the LEA's business at or near the time of the act, condition, or event of which they are related.  Such records were prepared in the ordinary course of business on behalf of the LEA by a person employed by the LEA who has personal knowledge to make a record of such event.  I have personally reviewed the files as it pertains to the Debtor prior to submitting this declaration.

3.      Upon information and belief, on June 1, 2017, the LEA received a complaint regarding illegal dumping at 12051 Browns Canyon Road, Chatsworth, California, a 13.3 acre property located in Oat Mountain which area is often referred to as Browns Canyon (the "*Property*"), which is co-owned by the Defendant and her ex-boyfriend.  The LEA's inspection on June 2, 2017 revealed piles of construction and demolition ("*C&D*") material throughout the Property in violation of Public Resources Code §§ 44000.5 and 44002, which require every operator of a solid waste facility to acquire a solid waste facilities permit.  A Notice of Violation ("*NOV*") was issued to the Property owners on June 6, 2017 for illegal disposal of C&D material which directed them to remove the C&D material from the Property and properly dispose of it.  A true and correct copy of the NOV is attached hereto as **Exhibit "A".**

---

[5] The LEA is certified by the California Department of Resources Recycling and Recovery ("*CalRecycle*") and authorized by Division 30 of the California Public Resources Code §§ 43209 and 45000, and Title 14 of the California Code of Regulations to enforce applicable solid waste regulations within the County of Los Angeles.

4.      Upon information and belief, the LEA inspected the Property on June 28, 2017, July 5, 2017, and October 12, 2017 and observed piles of C&D materials on the Property.  Thus, a *Cease and Desist and Corrective Action Order* ("**Cease and Desist Order**") was issued on January 12, 2018, directing the owners to immediately cease the import of all solid waste, and remove within thirty (30) days, all of the C&D material from the Property to a permitted solid waste facility and provide receipts to LEA to document the proper removal of such C&D material.  A true and correct copy of the Cease and Desist Order is attached hereto as **Exhibit "B".**

5.      The Defendant requested a hearing to appeal the Cease and Desist Order.  The hearing was held by the Los Angeles County Solid Waste Facilities Hearing Board (the "**Hearing Board**").  By *Decision and Order* issued on November 9, 2018, the Hearing Board concluded that the LEA acted in accordance with the applicable law and regulation in the issuance of the Cease and Desist Order.  A true and correct copy of the Decision and Order is attached hereto as **Exhibit "C".**

6.      The Defendant subsequently appealed the Hearing Board's finding to the State of California's Department of Resources Recycling and Recovery ("**CalRecycle**").

7.      Upon information and belief, on October 4, 2023, the CalRecycle hearing officer upheld, in full, the Cease and Desist Order. The Defendant did not appeal the CalRecycle Hearing Officer's determination, and that decision is now final.  *See* California Public Resources Code § 45040(a).  A true and correct copy of this decision is attached hereto as **Exhibit "D".**

8.      Pursuant to California Public Resources Code § 45011, the LEA has the authority to impose administrative penalties for the Defendant's violation of the Cease and Desist Order at a rate of up to $5,000.00 per day, beginning on February 12, 2018 to the present because the violations have not been abated.  Based on certain mitigating factors to be considered, the LEA has determined that penalties should be imposed at a rate of $4,500.00 per day.  *See California Public Resources Code § 45016.*

9.      Since LEA's Cease and Desist Order was entered on January 12, 2018, and the Defendant's compliance was required within thirty (30) calendar days (by February 11, 2018), penalties started accruing on February 12, 2018.  As of the Petition Date, the accrued penalties are in the total sum of $6,088,500.00 for 1,353 days in violation of the Cease and Desist Order.  As of the date of the filing of this Motion, the accrued penalties will total not less than $11,907,000.00 for 2,646 days out of compliance with the Cease and Desist Order.  Such penalties continue to accrue daily until Defendant's abatement of the violation.

10.      Upon information and belief, on November 30, 2023, the LEA and Defendant participated in mediation before Mediator, Sandra J. Coleman, Esq. (the "*Mediator*").  The mediation was unsuccessful but the parties participated in a continued mediation on July 2, 2024 with the Mediator and Patrick Flannery ("*Flannery*"), the co-owner of the real property and his counsel.  Although the continued mediation did not result in settlement, all parties agreed to participate in a further continued mediation on July 29, 2024 which was similarly unsuccessful.

11.      To the best of my personal knowledge, the LEA is certified by CalRecycle and authorized by Division 30 of the California Public Resources Code §§ 43209 and 45000, and Title 14 of the California Code of Regulations to enforce applicable solid waste regulations within the County of Los Angeles.  Thus, I believe that the LEA is a "governmental unit" as defined under Section 101(27) of the Bankruptcy Code.

12.      To the best of my personal knowledge, the Defendant's debt, which is comprised of penalties owed to the LEA, does not constitute "*compensation for actual pecuniary loss*", as those terms are described in Section 523(a)(7) of the Bankruptcy Code.  Upon information and belief, the imposed penalties do not serve a compensatory purpose but rather, its primary purpose is punitive.  Upon information and belief, the LEA's penalties do not, under any circumstances, serve to advance the LEA's pecuniary interests, but rather, to benefit the public welfare by penalizing the Defendant's past unlawful conduct and deter future wrongdoing.

13.      The LEA's records reflect that at least one complainant contacted the County of Los Angeles complaining of the Defendant's illegal operation.

14.     To the best of my personal knowledge, dumped waste that includes C&D material can be deleterious to public health and safety and the environment if it contains asbestos or other hazardous materials.  The Defendant has never produced documentation identifying the origin or content of the materials on the Property.  As a result of the conduct of Defendant, the Property is now considered a Closed, Illegal, or Abandoned (CIA) Landfill subject to the requirements in Title 27 of the California Code of Regulations (CCR) to meet State Minimum Standards for closed landfills.  By engaging in the illegal operation of the Defendant's unpermitted solid waste disposal over an extended period of time and failing to take corrective action, upon information and belief, the Defendant caused damage to the land in the unincorporated community of Oat Mountain, and by violating the Cease and Desist Order issued by the LEA, I believe that the Defendant caused damage to the public health and safety and the environment.

15.     Upon information and belief, by the Defendant's actual and implied knowledge of her continuous unlawful and illegal solid waste disposal operations without requisite permits, the Debtor acted willfully and maliciously to injure "another entity or to the property of another entity" (namely, the residents of the County of Los Angeles).

16.     Attached hereto as **Exhibit** "**E**" is a true and correct copy of the *Reporter's Transcript of Hearing before* the L.A. County Solid Waste Facilities Hearing Board dated November 6, 2018.

17.     Attached hereto as **Exhibit "F"** is a true and correct copy of the *Transcript of Continued Telephonic 341(a) Meeting of Creditors Before Nancy Zamora, Chapter 7 Trustee* dated February 11, 2022.

18.     Attached hereto as **Exhibit "G"** is a true and correct copy of *Plaintiff Los Angeles County Department of Public Health Acting as the Local Enforcement Agency's First Request for Admissions* served on October 17, 2024.

19.     Attached hereto as **Exhibit "H"** is a true and correct copy of *Defendant Andrea L. Murray's Response to Requests for Admissions Set One* dated November 30, 2024.

1      I declare, under penalty of perjury, under the laws of the United States of America, that the

2   foregoing is true and correct.

3      Executed this 5th day of May 2025 at Baldwin Park, California.

4

5   _____
    KAREN GORK

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

COUNTY OF LOS ANGELES
# Public Health

**BARBARA FERRER, Ph.D., M.P.H., M.Ed.**
Director

**JEFFREY D. GUNZENHAUSER, M.D., M.P.H.**
Interim Health Officer

**CYNTHINA A. HARDING, M.P.H.**
Chief Deputy Director

**ANGELO J. BELLOMO, REHS, QEP**
Deputy Director for Health Protection

**TERRI S. WILLIAMS, REHS**
Director of Environmental Health

## Solid Waste Program
5050 Commerce Drive
Baldwin Park, California 91706

**BOARD OF SUPERVISORS**

**Hilda L. Solis**
First District

**Mark Ridley-Thomas**
Second District

**Sheila Kuehl**
Third District

**Janice Hahn**
Fourth District

**Kathryn Barger**
Fifth District

June 6, 2017                                                          REF # Browns

Andrea Murray
12051 Browns Canyon Road
Chatsworth, CA 93550

**ILLEGAL DISPOSAL ON LAND LOCATED AT 12051 BROWNS CANYON ROAD, CHATSWORTH, CA 91311 WITH ASSESSOR'S PARCEL NUMBER (APN) 2821 019 039.**

Dear Ms. Andrea Murray;

During a field inspection on June 2, 2017 I observed material illegally disposed of on your property with the above-mentioned APN. This material includes but is not limited to construction debris, concrete, asphalt, and bricks.

With this letter, you are being directed to remove this material from your property, and properly dispose of it.  Proof of disposal at an approved facility will be required.  **Failure to remove and properly dispose of the material by July 15, 2017 may result in re-inspection fees, and/or referral to the district attorney's office for prosecution.  This order does not supersede any other requirements from any other agencies concerning this property and waste disposal or property maintenance. Any deadlines must be kept with them if they exist.**

Violations noted at the site include:

Los Angeles County Code, Title 11

     11.16.020 Sanitation of Premises
     11.16.050 Deposit of Offensive Substances Prohibited
     11.16.060 Rubbish-Storage Restrictions

Public Resources Code

    45005 Operating a solid waste facility without a permit


**Please call 661.287.7009 or e-mail me at [phundt@ph.lacounty.gov](mailto:phundt@ph.lacounty.gov) when you receive this letter.**

Sincerely,


Patricia Hundt, EHS III
Registered Environmental Health Specialist
Solid Waste Program

# EXHIBIT "B"

LOS ANGELES COUNTY DEPARTMENT OF PUBLIC HEALTH
SOLID WASTE MANAGEMENT PROGRAM
AS THE LOCAL ENFORCEMENT AGENCY (LEA)

# CEASE AND DESIST ORDER
# AND CORRECTIVE ACTION ORDER

IN THE MATTER OF:

12051 Browns Canyon Rd.

Chatsworth, CA 91311

APN: 2821-019-039

**CEASE AND DESIST AND
CORRECTIVE ACTION ORDER**

PUBLIC RESOURCES CODE SECTIONS
44002, 45000, 45005, 45011, 45023

Date of Order: January 12, 2018

TO:     Andrea Lynn Murray     And     Patrick Joseph Flannery

12051 Browns Canyon Road     18141 Rayen Street

Chatsworth, CA 91311     Northridge, CA  91323

and their Agents

**YOU ARE HEREBY ORDERED TO:**

**CEASE AND DESIST SOLID WASTE ACTIVITIES INCLUDING STOPPING THE**

**RECEIPT OF ALL SOLID WASTES**

**AT**

**12051 Browns Canyon Rd., Chatsworth, CA 91311**

**EFFECTIVE IMMEDIATELY**

**YOU ARE ALSO ORDERED TO TAKE ALL OTHER ACTIONS AND ABIDE**

CEASE AND DESIST AND CORRECTIVE ACTION – 12051 BROWNS CANYON RD.     PAGE 1

**BY ALL OTHER ORDERS CONTAINED HEREIN.**

**PLEASE TAKE NOTICE THAT:**

WHEREAS, the property located at 12051 Browns Canyon Rd. is located in the unincorporated area of Los Angeles County near Chatsworth, California 91311; and,

WHEREAS, Patrick Joseph Flannery and Andrea Lynn Murray ("Owners") are the owners of record of the property located at 12051 Browns Canyon Rd., Chatsworth, CA 91311 and,

WHEREAS, observations made by the LEA indicate that the Owners are conducting operations that are consistent with the definition of a solid waste facility (SWF) on said property without obtaining a required Solid Waste Facility Permit (SWFP); and,

WHEREAS, the Los Angeles County Department of Public Health, Solid Waste Management Program, has authority to act as the Local Enforcement Agency (LEA) for this activity pursuant to Public Resource Code (PRC) section 43200 et seq.; and,

WHEREAS, this facility is in violation of PRC sections 44000.5 and 44002, which require every operator of a SWF to acquire a SWFP; and,

WHEREAS, pursuant to subdivision (b) of section 44002 of the PRC, upon discovery of a SWF operated without a permit in violation of subdivision (a) of the same section, the LEA shall immediately issue a cease and desist order under PRC section 45005; and,

WHEREAS, pursuant to sections 45000 and 45011 of the PRC, the LEA has the authority to order any owner or operator of a SWF in violation of Division 30 of the PRC or a regulation promulgated under that authority, and/or any person who has disposed of waste at a site in violation of PRC section 44000.5 to clean up, abate, or otherwise remedy the violations by taking specific actions by a specified date; and,

WHEREAS, pursuant to PRC section 45011 and 45023, the Los Angeles County LEA has the authority to seek administrative civil penalties not to exceed five thousand dollars ($5,000) for each day of illegal operation of a solid waste facility, and not more than ten thousand dollars ($10,000) for each day of violation of illegal operation of a solid waste facility from any person who intentionally or negligently violates any standards adopted by the California Department of Resources, Recycling, and Recovery (CalRecycle);

## FACTS

On June 1, 2017, the LEA received a complaint regarding illegal dumping at 12051 Browns Canyon Rd in Chatsworth, CA 91311. The following day on June 2, 2017, Inspector Patricia Hundt conducted the complaint investigation which revealed piles of construction and demolition (C&D) material throughout the property. A Notice of Violation (NOV) letter was issued to the property owners on June 6, 2017 for C&D material being illegally disposed on the property. The NOV directed the property owners to remove the material from the property and properly dispose of it.

On June 28, 2017 and July 5, 2017, the LEA participated in a multi-agency inspection of the property and observed piles of C&D material throughout the property. On October 12, 2017, inspector Patricia Hundt and Supervisor Dorcas Hanson-Lugo of the LEA observed that the same C&D material piles from previous inspections were still present throughout the property, along with additional new piles of C&D material. Photographic evidence of the C&D materials was taken during the October 12, 2017 inspection.

**PURSUANT TO PRC SECTIONS 44002, 45000, 45005, AND 45011, AND CALIFORNIA CODE OF REGULATIONS (CCR) TITLE 14 SECTION 18304, OWNERS ARE ORDERED TO:**

1. **Immediately Cease and Desist operations** including the import, delivery and disposal of all solid waste.

2. **Within 30 calendar days of the receipt of this order,** remove all the C&D material from the subject site to a permitted SWF approved to accept these materials. Provide all receipts to the LEA to confirm and document the proper removal of this C&D material.

Owners shall submit the receipts by certified mail or email to:

Los Angeles County Department of Public Health

Solid Waste Management Program/LEA

Attention: Dorcas Hanson-Lugo

5050 Commerce Dr.,

Baldwin Park, CA 91706

dlugo@ph.lacounty.gov

**PLEASE TAKE NOTICE THAT**

If the above actions are not completed or complied with by the specified dates, the Los Angeles County LEA may:

1. Petition the superior court for injunctive relief to enforce any part of this Cease and Desist and Corrective Action Order. (PRC section 45014.)

2. Petition the superior court for civil penalties in an amount not to exceed $10,000 per day for each violation. (PRC sections 45023 and 45024.)

3. Impose administrative civil penalties in an amount not to exceed $5,000 per day for each day the Facility fails to achieve compliance with the time frames specified above. (PRC section 45011.)

4. Independently, or with CalRecycle, seek cost reimbursement necessary to perform any cleanup, abatement, or remedial work needed to protect public health and safety or the environment. (PRC sections 45000 and 48020 et seq.) Funds so expended by Los Angeles County LEA and/or CalRecycle constitute a lien upon the real property owned by any responsible party that is subject to the remedial action, pursuant to PRC section 48023.5.

The LEA and/or CalRecycle shall not be liable for injuries or damages to persons or property resulting from acts or omissions by the Owner or related parties in carrying out activities pursuant to this order, nor shall the LEA and/or CalRecycle be held as a party to any contract entered into by the Owners or their agent(s) in carrying out activities pursuant to this order.

Nothing in this order shall constitute or be construed as a satisfaction or release from liability for any conditions or claims arising as a result of past, current, or future operations. Notwithstanding compliance with the terms of this Order, the Owner and operator may be required to take further actions as necessary to protect public health, safety or the environment.

This Order does not relieve the Owners from complying with all other local, state, and federal requirements or prevent the LEA and/or CalRecycle from taking any and all other actions allowed by law. This Notice and Order is supported by the accompanying declaration by Dorcas Hanson-Lugo.

CEASE AND DESIST AND CORRECTIVE ACTION – 12051 BROWNS CANYON RD.          PAGE 4

This Notice and Order may only be amended in writing by an appropriate representative of the LEA.

**DECLARATION**

I, Dorcas Hanson-Lugo, declare

1.  I have been employed as an Environmental Health Specialist for the Environmental Health Division of the Los Angeles County Department of Public Health since 2003. In this capacity, I currently act as an agent of the Local Enforcement Agency (LEA) performing on-site inspections of active and closed solid waste facilities and investigating solid waste complaints and referrals on behalf of the LEA.

2.  I am registered with the State of California as a Registered Environmental Health Specialist (REHS).  If called to testify to the following, I could do so competently.

3.  I have personal knowledge that the site is in violation of the PRC and CalRecycle regulations through visual observation of the site during an inspection.

4.  True and correct photos of the site taken by myself from Los Angeles County LEA on October 12, 2017 are attached as Exhibit 1.

I declare under penalty of perjury under the laws of the State of California that the above information is true and correct. Executed this 12th day of January 2018, in Los Angeles County, CA.

Signed: _Dorcas Hanson-Lugo_

Dorcas Hanson-Lugo, EHS, LEA

CEASE AND DESIST AND CORRECTIVE ACTION – 12051 BROWNS CANYON RD.          PAGE 5

## RIGHT TO APPEAL

You have the right to appeal this Order (PRC Sec. 44307). You must do so by submitting a written request for a hearing, together with a statement of issues on which your appeal is based, within 15 days. Request for Hearing and Petitioner Hearing Information forms are being provided with this Order. The appeal must be sent to Los Angeles County Public Health, Solid Waste Management Program/Local Enforcement Agency (LEA), 5050 Commerce Drive, Baldwin Park, Ca 91706, Attention: Maurice Pantoja, Manager (PRC Sec. 44310).

An appeal does not stay the effect of any provision of this Cease and Desist and Corrective Action Order. However, you may petition the Director of CalRecycle, in writing, to stay the effect of this Cease and Desist and Corrective Action Order, or portion thereof, pending the completion of your administrative appeals (PRC Sec. 45017). A petition submitted must be in writing and shall state the extraordinary circumstances that justify the stay. The petition shall also state the grounds, if any, on which a finding may be made that the immediate effect of the order or determination will preclude or interfere with the provision of an essential public service so that the public health and safety or the environment will be adversely affected (PRC Sec. 45017).

This Cease and Desist and Corrective Action Order is issued as of the date set forth below.

Signed: _____        Date: 1/12/18

Maurice Pantoja, Manager

County of Los Angeles, Department of Public Health, Local Enforcement Agency

5050 Commerce Dr., Baldwin Park CA 91706

CEASE AND DESIST AND CORRECTIVE ACTION – 12051 BROWNS CANYON RD.        PAGE 6

EXHIBIT 1 – PHOTOS OF PILES OF CONCRETE AND DEMOLITION MATERIAL

 

 



State of California
CalRecycle 218 (Revised 9/11)

Department of Resources Recycling and Recovery (CalRecycle)

# REQUEST FOR HEARING

Before the Local Solid Waste Hearing Panel or Hearing Officer

Public Resources Code (PRC) 44310 et. seq.

| Enforcement Agency: | |
|---|---|
| Facility Name: | | SWIS No: |
| Facility Address: | | City: | | Zip Code: |

| Name of Petitioner: | |
|---|---|

Requests a Hearing in the matter of (check one):

☐ Challenge terms and/or conditions of the issued (PRC 44307) Solid Waste Facility Permit (SWFP)

☐ Appeal an enforcement order (PRC 44307, 45017(b))

☐ Alleged failure of the EA to act as required by law or regulation (PRC 44307)

☐ Appeal completeness review of ☐ Registration (CCR 18104.4) or ☐ Standardized (CCR 18105.4) SWFP.

☐ Denial of the SWFP (PRC 44300)

☐ Suspension of the SWFP (PRC 44305)

☐ Revocation of the SWFP (PRC 44306)

☐ Denial of Proposed RFI Amendment(s) (CCR 21665)

Statement of the Issues (Appellants may wish to add additional pages to fully explain the legal and factual basis for their appeal) :    ☐ Check if additional pages are attached.

| Signature: | | Typed Name: | |
|---|---|---|---|
| Title: | | Date: | |

# EXHIBIT "C"

**BEFORE THE DEPARTMENT OF RESOURCES RECYCLING AND RECOVERY**

**STATE OF CALIFORNIA**

**IN THE MATTER OF:**

**ANDREA MURRAY,**

**Appellant,**

**LOS ANGELES COUNTY DEPARTMENT OF PUBLIC HEALTH, SOLID WASTE
MANAGEMENT PROGRAM, ACTING AS LOCAL ENFORCEMENT AGENCY,**

**Respondent**

**DECISION AND ORDER**

## I.    INTRODUCTION

This matter came before the Department of Resources Recycling and Recovery (CalRecycle) based on an appeal filed pursuant to Public Resources Code (PRC) section 45030 by Appellant, Andrea Murray (Murray).  Respondent Los Angeles County Department of Public Health Solid Waste Management Program (LEA) was represented by Renee E. Jensen, esq. of Ford, Walker, Haggerty & Behar, LLP.  Murray appeared on her own behalf.

On November 21, 2018, Murray filed her Notice of Appeal and Request for hearing in connection with November 9, 2018, Decision and Order issued by the Los Angeles County Solid Waste Facilities Hearing Board (County Board) upholding a January 12, 2018, Cease and Desist and Correction Action Order (CDO) directing Murray to cease and desist the delivery of solid waste and to remove solid waste at 12051 Browns Canyon Road in Chatsworth, California (Property).  CalRecycle determined that Murray's appeal raised one or more substantial issues and accepted the appeal.

Having considered the record and arguments submitted by Murray and the LEA, and for good cause appearing, CalRecycle has made the following determinations:

## II.    FACTS

Murray is the owner of the Property--13.3 acres used for residential and ranching purposes. (August 7, 2018, Hearing Transcript (Aug Tr.) 12:23-24; LEA Ex. 1; Murray Opening Brief to CalRecycle (Opening Brief) at 1.)

From March 2017 to June 2017 Murray deposited substantial amounts of material on the Property including broken bricks, broken concrete, broken rocks, rebar, asphalt, decomposed granite, and soil ("Material"). (See report of John Bollinger, DBS (Bollinger Report) P. 2 and Figure 3; Opening Brief 5:3-7, 3:11-28, 4:1-7.) Murray estimates that 1665 cubic yards of material were deposited on the Property, or about 135 truckloads.  (Bollinger Report at 2.)  The LEA, on the other hand, estimates much higher amounts - 9,158 cubic yards of material or approximately 916 truckloads.  (Bollinger Report at 2; 2/12/18 LEA Insp Report at 10.)  The Material was stockpiled at several different locations on the Property. (Bollinger Report P. 2 and Figure 3; Opening Brief 3:11-28, 4:1-7, 5:3-7.)

Some of the Material was used in Property improvements, some was exported (Murray estimates 9 truckloads), and some remains stockpiled on the Property. (Bollinger Report Fig. 1; Nov. Tr. 12:21-25, 13:1-4.)  However, a complete account of the Material was not produced.

In early June 2017, the LEA received a complaint of illegal dumping at the Property.  (Aug Tr. 13:17-22.)  It inspected the Property a few days later and observed the stockpiled Material which included construction debris, concrete, asphalt, and bricks. (Aug Tr. 13:17-22; Opening Brief 5:3-7.)

On June 6, 2017, the LEA issued Murray a Notice of Violation (NOV) for illegal disposal of material on the Property.  The NOV directed Murray to remove the material and properly dispose of it at an approved facility by July 15, 2017.  (See NOV; Aug. Tr. 13:22-24.)

In June and July 2017, the LEA attempted to inspect the Property to ascertain compliance with the NOV but was denied entry by Murray.  However, the LEA observed from a road adjacent to the Property that the stockpiled Material was still present. (Aug. Tr. 13:25-14:1-3.)

On October 12, 2017, the LEA again observed from the roadway that the stockpiled Material remained on the Property.  (Aug. Tr. 14:4-8.)

On January 12, 2018, the LEA issued its Cease and Desist and Corrective Action Order (CDO).

On January 16, 2018, the LEA, along with other State agencies, attempted to inspect the Property but was denied entry.  (Aug. Tr. 14:12-13; Murray Opening Brief 8:8-21.)

On February 12, 2018, the LEA inspected the Property along with LA County Department of Public Works, Department of Regional Planning, and the District Attorney.  The LEA observed that the stockpiled Material was still present on the Property. (2/12/18 LEA Report P. 1.)

On February 15, 2018, Murray requested a hearing pursuant to PRC section 44307 and 45017(b), challenging the CDO and asserting that it "mischaracterizes construction materials as waste subject to the Public Resources Code.  Petitioner disputes not only the characterization of the materials but each and every allegation of the [CDO]."  (See Murray Request for Hearing Before the Local Solid Waste Hearing Panel or Hearing Officer.)

In July 2018, the LEA observed from the road adjacent to the Property that some of the stockpiled Material had been used for road and Property improvements and that some materials had been removed. (Aug. Tr. 15:16-19.)

A hearing was held before the Solid Waste Facilities Hearing Board of the County of Los Angeles (County Board) commencing on August 7, 2018.  The Parties presented their respective positions to the County Board, but the matter was continued with direction to the Parties to "exchange information", view the Property, and discuss potential settlement. (Aug. Tr. 109:13-25, 110:1-7; 112:1-19.)

On August 16, 2018, the LEA inspected the Property accompanied by Murray. (November 6, 2018 (Nov.) Tr. 11:1-3.)  The LEA observed that most of the stockpiled material was gone although some remained.  (Nov. Tr. 12:4-6.) The LEA issued a compliance inspection report requiring Murray to submit a work plan for LEA approval. (Nov. Tr. 12:21-25, 13:1-4.)

On October 9, 2018, Murray ordered nine truckloads of material to be delivered to the Property.

On October 11, 2018, DA inspector stopped two trucks filled with construction materials, including dirt and concrete, bound for delivery at the Property.  The truck drivers held invoices from Murray with her name and address on them.  (Nov. Tr. 30:9-14, 32:16-25, 33:1.)  An additional seven truckloads of material were ultimately delivered to the Property. (Opening 17:9-11.)

On October 11, 2018, the LEA again observed the Property from the adjacent road.  It saw that the materials observed on August 16 remained on the Property.  (Nov. Tr. 14:3-9.)

On November 6, 2018, the County Board issued its decision finding that "the LEA acted appropriately and in accordance with the laws and regulations of the state of California and have issued a cease and desist order on the Murray-Flannery property for the improper disposal of construction demolition materials." (Nov. Tr. 95:22-25; 96:1-8.)  A final written decision was issued on November 9, 2018.

On November 21, 2018, Murray submitted her appeal of the hearing board's decision to CalRecycle. (see Notice of Appeal to CalRecycle.)

### III.   PROCEDURAL HISTORY BEFORE CALRECYCLE

On February 1, 2019, Murray emailed the Hearing Officer requesting that the matter be stayed "pending outcome of a criminal case filed by the County of Los Angeles against Ms. Murray and involving the same set of facts.  The LEA objected to any stay, but agreed to a continuance of the hearing until the criminal case was resolved.  On February 1, 2019, the Hearing Officer granted a continuance of the matter.

In her briefing, Murray notes that the Hearing Officer did not 'grant or deny' the request for stay. However, a stay can only be granted by written petition to the Director.  (PRC section 45017(a)(1).)  No such petition was made here.

A status conference was held on December 7, 2022.  Murray and the LEA informed CalRecycle that the criminal case had concluded and that the Parties were prepared to move forward.  The Parties agreed to submit written arguments and a Briefing Order was issued on December 19, 2022.

Murray submitted her Opening Brief on February 4, 2023.

The LEA submitted its 'Response to Appellant' on February 16, 2023.

Murray submitted her 'Response Brief' on March 2, 2023.

The LEA submitted its 'Reply to Response' on March 16, 2023.

Murray submitted her 'Response to Sur-Reply' on March 27, 2023.

### IV.   EVIDENTIARY ISSUES

Both the LEA and Murray made requests to supplement the record.  The record on appeal shall consist of the record before the LEA and the written arguments submitted by the Parties. However, other relevant evidence may be considered at CalRecycle's discretion (PRC section 45032.)

On May 8, 2023, the LEA submitted its Request to Supplement the Record on Appeal to CalRecycle, asking to include: 1) the June 6, 2017, Notice of Violation issued by the LEA to Murray; and, 2) a July 16, 2019, letter from the LEA to Murray indicating its intent to assess penalties.

The LEA's request to supplement the record with the June 6, 2017, NOV is granted. The NOV should have been included in the record before the LEA but was inadvertently left out.

The LEA's request to supplement the record with the July 16, 2019, penalty letter is denied. The letter is not part of the record before the LEA and its relevance has not been established. Penalties are not at issue in this matter.

On May 12, 2023, Murray submitted her Request to Supplement the record with various documents including photographs, maps, new articles, and documents related to other legal proceedings. On May 15, 2023, the LEA submitted its Objections and a Proposed Order Thereon. (see also LEA Opposition Brief 12:24-28, 13:1-9)

The Hearing Officer's Order re the LEA's objections is issued concurrently with this Decision and Order. The LEA's objections are sustained and Murray's request to supplement the record is denied.

## V.    STANDARD OF REVIEW

PRC section 45030(a) provides that "a party to a hearing held pursuant to Chapter 4 … may appeal to [CalRecycle] to review the written decision of the … hearing officer". (PRC section 45030(a).)

PRC section 45032(b) provides, in part, that CalRecycle: "may only overturn an enforcement action, and any administrative civil penalty, by a local enforcement agency if it finds, based on substantial evidence, that the action was inconsistent with this division." (PRC section 45032(b).)

Substantial evidence is evidence "'of ponderable legal significance,'" which is reasonable in nature, credible and of solid value. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633; *Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 305, fn. 28.). "'Substantial evidence' means that evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined." (*People v. Conner* (1983) 34 Cal.3d 141, 149.)

## VI.    LEGAL CONCLUSIONS
### A.    The California Waste Management Act

Division 30 of the Public Resources Code concerns waste management and is known as the California Waste Management Act of 1989. (PRC section 40050; "Act".) The purpose of the Act, in part, is to reduce, recycle and reuse solid waste generated in California to the maximum extent feasible in an efficient and cost-effective manner to conserve natural resources and to protect the environment. (PRC section 40052.) The Legislature has declared that the responsibility for solid waste management is a shared responsibility between the state and local governments. (PRC section 40001(a).) The state and local enforcement agencies must promote waste management practices including environmentally safe land disposal (PRC section 40051.)

The Act broadly authorizes a designated enforcement agency to take action in connection with solid waste handling and disposal. (PRC section 43200.5(a).) An enforcement agency must enforce provisions of the Act within its jurisdiction and maintain an inspection program designed to identify and address illegal disposal of solid waste. (PRC section 43209.) Chief among the LEA's enforcement provisions is PRC section 44000.5:, "a person shall not dispose of solid waste … or accept solid waste for disposal, except at a solid waste disposal facility for which a solid waste facilities permit has been issued pursuant to [Division 30]." (PRC section 44000.5.)

### B.  The Cease and Desist and Corrective Action Order

Where there has been a disposal of solid waste in violation of section 44000.5, the enforcement agency may issue a cease and desist order (PRC section 45005.). A CDO is authorized where there was disposal of solid waste: (1) in violation of a solid waste facilities permit; (2) without a solid waste facilities permit; or (3) in a manner that causes or threatens to cause a condition of hazard, pollution, or nuisance. (PRC section 45005(a)(1)-(3); see also PRC section 44002(b).)

The January 12, 2018, CDO alleges Murray is in violation of PRC section 44000.5 for unpermitted disposal of solid waste. It orders Murray to:

1.  Immediately cease and desist operations including the import, delivery and disposal of all solid waste; and,
2.  Within 30 calendar days of receipt of this order, remove all C&D material from the subject site to a permitted SWF approved to accept these materials. Provide all receipts to the LEA to confirm and document the proper removal of this C&D material.

### C.  The Material Stockpiled by Murray on the Property is Solid Waste

In her appeal to CalRecycle, Murray argues that the LEA does not have jurisdiction over her activities because the materials are not solid waste. "[t]he CDO treats [Murray] as a solid waste facilities operator when she was not; she only imported construction materials for end-use construction projects on her agricultural property". (Notice of Appeal at P. 2, L. 3.) "[i]n order for the [Act] to apply and for the LEA to have jurisdiction, there needs to be disposal going on." (Nov. Tr. 44:4-7.) Since the material was imported for purposes of improving the Property, Murray contends, it is not solid waste subject to the LEA's enforcement action. (Nov. Tr. 71:1-3.)

The Legislature, in enacting the Integrated Waste Management Act and setting forth responsibilities and powers of CalRecycle, has broadly defined "solid waste":

> … "solid waste" means all putrescible and nonputrescible solid, semisolid, and liquid wastes, including garbage, trash, refuse, paper, rubbish, ashes, industrial wastes, **demolition and construction wastes**, abandoned vehicles and parts thereof, discarded home and industrial appliances, dewatered, treated, or chemically fixed sewage sludge which is not hazardous waste, manure, vegetable or animal solid and semi solid wastes, and other discarded solid and semisolid wastes." (PRC § 40191(a); emphasis added.)

14 CCR section 17225.15 provides in relevant part: **"Construction and Demolition Wastes"** include the waste building materials, packaging and rubble resulting from construction, remodeling, repair and demolition operations on pavements, houses, commercial buildings and other structures." (14 CCR § 17225.15; see also 14 CCR section 17388(c).)

Murray admits that from March 2017 to June 14, 2017, she stockpiled inert construction demolition materials on the Property. (Appeal 3:1-27, 4:6; Aug. Tr 44:23-25, 45:1-2, 6-10; 57:21-25.).) Throughout the record, Murray describes the material as including broken concrete, broken rocks, broken brick, soil, and decomposed granite.  (Appeal 3:1-27, 4:6; Tr 44:23-25, 45:1-2, 6-10; 57:21-25.).)  Murray's own expert characterizes the material as "construction and demolition material" and describes it as "primarily consisting of concrete, soil and brick". (Bollinger Report at 2; Tr. 44:1-8; LEA Inspection reports.)  Extensive photographs of the materials taken by both parties on various dates are consistent with construction and demolition materials, i.e., broken concrete, soil, and brick.

The material imported by Murray falls within the plain definition of solid waste and construction and demolition wastes provided by the Act and its regulations.  "If the [statutory] language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737, 21 Cal.Rptr.3d 676, 101 P.3d 563.).  Murray seeks to expand the clear definition of 'solid waste' to include consideration of her plans for the Material but the statutory language is clear.  There is nothing absurd about treating broken bricks, broken concrete, and other construction and demolition wastes as solid waste. Murray presents no compelling reason to look beyond plain language of the Act.  The Materials are solid waste subject to the LEA's enforcement action.

     D.  <u>Murray's is not Operating a CDI Recycling Center</u>

Murray further argues that her activities are exempt from regulatory requirements because "according to [CCR section 17381.1 [Murray] was operating a CDI Recycling Center." (Opening Brief at 21.)

A site that: 1) receives only source-separated construction and demolition debris and inert debris (CDI) and: 2) meets applicable storage time limits, may be classified as a CDI recycling center.  (see 14 CCR section 17381.1) CDI recycling centers are not subject to certain processing regulatory requirements. (Section 17381.1(a).)

'Source-separated' means that the material has been "separated from the solid waste stream by the generator of that material or by a processor prior to receipt at a CDI recycling center and has not been commingled with other solid waste or recyclable materials." (Section 17381.1(a)(1)(A).

Murray asserts that the Materials "were source separated at the construction sites" but she has not produced receipts, shipping reports or other concurrent documentation to support that assertion.  The burden of proof shall be on the owner and operator of the recycling center to demonstrate it is in compliance.  (14 CCR 17381.1(g)(1).).  Murray's unsupported claim that she only received source separated material is not substantial evidence and she has not met her burden of proof.

Furthermore, Murray admits that she has failed to comply with storage time requirements for CDI Recycling Centers.  Murray asserts that she was "prevented from complying with the storage time limits … by a court ordered stay from July 3, 2017, until October of 2017, as well as various orders issued by the government agencies, and due to the D.A. directing Ms. Murray to delay working…".  However, the Act does not provide for extensions of time limits under such circumstances.  Extensions are available only where specified in a land use entitlement for the

site, or where the LEA finds based on substantial evidence and a work plan submitted by the owner that the additional time does not increase the potential harm to public health, safety and the environment. (14 CCR 17381.1(e)(5)-(6).)  Neither extension applies here.

Murray's operation does not qualify as a CDI Recycling Center.  There is not substantial evidence that the material was source-separated and Murray has not met applicable storage time limits.

### E.  Murray's Activities do not Qualify as a Farm or Ranch Disposal Site

In her Reply Brief, Murray argues that her activities "fall under the classification of a "Farm or Ranch disposal site for one or two-family use" per CCR section 21565(b)(4).  While the LEA may grant an exemption from the requirement to obtain a permit or comply with other regulatory tier requirements, it can only occur after a public hearing where specific findings are made including that the nature of the solid waste poses no significant threat to health, safety, or the environment. (27 CCR section 21565(a).). No such public hearing was held here, therefore the exemption does not apply..

At hearing before the County Board, Murray presented testimony that her activities were exempt pursuant to certain county ordinances.  (See testimony Bollinger; Response Brief figure 7.)  However, the scope of Murray's appeal is limited, and CalRecycle may only overturn the CDO where there is substantial evidence that it is inconsistent with the Act.  Whether the CDO is consistent with the county ordinances cited by Murray is beyond the scope of this appeal.

## VII.    CONCLUSION

Murray admits depositing substantial amounts of construction debris on the Property, including broken concrete, broken bricks, and broken rocks. The Material deposited by Murray on the Property is solid waste per the plain language of the Act and is subject to regulation by the LEA.

Murray contends that the Material was stockpiled on the Property for use in property-improvement projects.  While some of the Material was used for that purpose, other portions were exported, and some remained stockpiled at the LEA's last inspection in August 2018.

A complete account of the Material was not produced.  Amounts and allocations were only estimated after-the-fact, and significant questions remain regarding the nature of the Material-including whether it was source-separated and free of hazardous substances.

The LEA's CDO is consistent with the Act and its Regulations and is hereby upheld in full.

## ORDER

CalRecycle hereby determines that the Cease and Desist and Corrective Action Order of January 12, 2018, issued by the Los Angeles County Department of Public Health Solid Waste Management Program as the Local Enforcement Agency is consistent with Division 30 of the California Public Resources Code and its regulations.  Therefore, it is upheld in full.

This Decision shall be effective upon receipt by the Parties.

Dated: _10/4/23_

_____
Douglas C. Jensen
Attorney IV
CalRecycle
Hearing Officer

# EXHIBIT "D"

IN RE: APPEAL BY ANDREA MURRAY OF THE LOS ANGELES COUNTY
LOCAL ENFORCEMENT AGENCY'S CEASE AND DESIST ORDER AND
CORRECTIVE ACTION ORDER REGARDING PROPERTY LOCATED AT 12051
BROWN'S CANYON ROAD, IN THE UNINCORPORATED AREA OF LOS
ANGELES COUNTY NEAR CHATSWORTH, CALIFORNIA (APN: 2821-019-039)
BEFORE THE LOS ANGELES COUNTY SOLID WASTE FACILITIES HEARING
BOARD

## FACTUAL BACKGROUND

A.      On January 12, 2018, the Los Angeles County Department of Public
Health, acting as a Local Enforcement Agency ("LEA"), issued a Cease and Desist Order
and Corrective Action Order (hereafter "Order") to Andrea Lynn Murray and Patrick
Joseph Flannery ("Property Owners"). The Order alleged that the property located at
12051 Browns Canyon Road, Chatsworth, CA ("Site") is owned by the Property Owners
and that the Site is being operated as a solid waste facility without a solid waste facilities
permit in violation of Public Resources Code sections 44000.5 and 44002(a).

B.      The Order directed the Property Owners to immediately cease and desist
operations at the Site including import, delivery and disposal of solid waste.
Furthermore, the Order directed the Property Owner to remove all construction and
demolition ("C&D") material from the Site and to properly dispose of this material at a
permitted solid waste facility approved to accept these materials within 30 days. The
Property Owner was directed to provide receipts to the LEA to confirm and document the
proper removal of this C&D material.

C.      On February 14, 2018, Andrea Murray ("Petitioner") submitted a Request
for Hearing in accordance with Public Resources Code sections 44307 and 45017(b) to
appeal the Order. Petitioner asserted that the Order "mischaracterizes construction
materials as waste subject to the Public Resources Code. Petitioner disputes not only the
characterization of the materials but each and every allegation of the Order."

D. The Los Angeles County Solid Waste Facilities Hearing Board ("Hearing
Board") was established by the Los Angeles County Board of Supervisors pursuant to
Chapter 2.56 of the Los Angeles County Code, in accordance with the Public Resources
Code, to hear and issue decisions on such appeals.

E.      On February 27, 2018, the LEA submitted to the Hearing Board its
Response to Petitioner's Statement of Issues.

F.      The hearing in this matter commenced on August 7, 2018, with all
members of the Hearing Board present. Notice of the hearing was provided to all parties
and posted in accordance with the Brown Act. Prior to the hearing, the LEA submitted
the following documents to the Hearing Board via Dropbox, and this Dropbox folder was
shared with Petitioner:

1.      The Order;

2.      Petitioner's February 14, 2018 Request for Hearing;

3.      The LEA's February 27, 2018, Response to Petitioner's Statement of Issues.

4.      The LEA's inspection observations dated February 12, 2018.

5.      Copies of various statutes and regulations including California Public Resources Code sections 40191; 40121; 40194; 45000.5; 44001; and 44002, and California Code of Regulations, Title 14, Division Chapter 3, Article 5.9, Sections 17380-17386; Sections 17387-17390, and Article 4.

6.      The LEA's Witness List.

G.      At the August 7, 2018 hearing, the LEA was represented by Renee Jensen of Walker, Haggerty & Behar, LLP. The Petitioner was represented by Mainak D'Attaray. The following witnesses testified:

1.      Eric Morfuji, Field Supervisor and inspector for the LEA, who testified for the LEA regarding his observations during a February 12, 2018 inspection of the Site, as well as observations of the Site visible from public view on various other occasions; Mr. Morfuji presented the first part of a power-point presentation that is attached to the court reporter's transcript as Exhibit 1;

2.,     Shikari Nakagawa-Ota, the Chief of Environmental Health Services, LEA, also testified for the LEA. Ms. Nakagawa-Ota testified regarding the basis for the Order, and presented the second half of the power-point presentation that is attached as Exhibit 1 to the transcript prepared by the court reporter, regarding the basis for the Order.

3.      Andrea Murray, Petitioner, testified on her own behalf. She provided testimony of her use of the C&D materials on her property, and presented photographs.

4.      John Bollinger testified as an expert witness in support of Petitioner's beneficial reuse of the C&D materials.

H.      The hearing was not completed during the allotted time, and the Hearing Board therefore continued the hearing to September 5, 2018 with the agreement of the Property Owner and LEA. At the urging of the Hearing Board, the parties agreed that the LEA would conduct a re-inspection of the Site to ascertain whether the Petitioner had complied with the Order and Petitioner would allow the LEA onto her property to conduct such an inspection. The hearing was subsequently continued to November 6, 2018 and notice of the new date was provided to all parties and posted in accordance with the Brown Act.

I.      Prior to the November 6, 2018 hearing date, the LEA submitted the following additional documents to the Hearing Board and Petitioner via Dropbox:

      1.     A September 21, 2018 Compliance Inspection Report for the Site, submitted on September 26, 2018.

      2.     An updated LEA witness list, submitted on October 30, 2018;

      3.     A copy of the August 7, 2018 power-point presentation, submitted on October 30, 2018;

      4.     A document entitled Possible Exemptions and Exclusions Not Subject to Codes; submitted on October 30, 2018.

J.     On October 30, 2018, Petitioner shared a Dropbox file with the Hearing Board's Secretary, which she shared with the Hearing Board and LEA, containing the following:

      1.     A folder labelled Petitioner's Exhibits, containing 46 exhibits numbered 1-45 and a duplicate Exhibit 21.

      2.     A folder labelled Area C Current Pictures, consisting of 48 photographs.

      3.     A folder labelled Area B Current Pictures, consisting of 31 photographs.

      4.     A folder labelled Area D Current Pictures, consisting of 20 photographs.

      5.     A folder labelled Area E Current Pictures, consisting of 20 photographs.

      6.     A folder labelled Area F Current Pictures, consisting of 7 photographs.

      8.     A folder labelled Area G Current Pictures, consisting of 3 photographs.

      9.     A folder labelled Area H Current Pictures, consisting of 7 photographs.

      10.     A folder labelled Area I Current Pictures, consisting of 9 photographs.

      11.     A document entitled "Before and After Photo Comparison Binder."

      12.     A folder entitled "Exhibit 2, Development Schedule," which contains a document entitled "Five Year Master Plan of Implementation."

      13.     Petitioner's Witness List;

14.     A document entitled "Executive Summary, Survey and Master
Plan of the Disposition of C&D Materials Stockpiled on the Murray Ranch
Property, 12051 Browns Canyon Road, Chatsworth, CA," by John Bollinger,
dated July 2018.

15.     A folder entitled "Concrete and Soil Use," containing document
entitled "Plan for Disposition of Remaining Materials on Murray Ranch Site."

16.     A folder entitled "Murray Ranch Inspection Binder."

17.     A folder entitled "Eric Admits Not a Dumpsite," containing a
video showing a conversation between Eric Morfuji and Petitioner.

J.      The continuation of the hearing took place on November 6, 2018.  All
Hearing Board members were present.  The following witnesses testified:

1.      Eric Morfuji, Field Supervisor and inspector for the LEA, who provided
an update regarding the LEA's re-inspection of the Site and the LEA's determination that
the Petitioner failed to establish that she had complied with the Order by either properly
disposing the material or properly using it onsite.

2.      Shikari Nakagawa-Ota, the Chief of Environmental Health Services, LEA,
provided additional testimony as to the basis for the LEA's determination that the
Petitioner failed to comply with the Order.

3.      Lisa Naslund, Grading and Drainage Section Head for the Los Angeles
County Department of Public Works Building and Safety Division testified for the LEA,
as to the Petitioner's failure to obtain grading permits for the work at the Site.

4.      Nathan Merrick, an employee of the Los Angeles County Department of
Regional Planning, also testified for the LEA.  He testified that he observed disposal
activities occurring on the property and testified that the Petitioner did not obtain proper
permits from the Department of Regional Planning such activities.

5.      Mr. D'Attaray objected to the testimony of Ms. Naslund and Mr. Merrick
on the basis that this testimony relates to enforcement proceedings by separate agencies
unrelated to the LEA's Order.  After hearing from the LEA's counsel, the Hearing Board
noted the objection but allowed the testimony to proceed.

6.      Joseph Priebe, an investigator with the Los Angeles County District
Attorney's Office, testified for the LEA, that he stopped two trucks filled with
construction debris at the entrance to Brown's Canyon Road, and the drivers presented
invoices containing Murray's name and address.

7.      John Bollinger testified as an expert for Petitioner that the Petitioner's
activities at the Site are exempt from the law and regulations related to solid waste based
on the building code.

## ORDER

Having reviewed and considered the evidence and argument presented by both parties, the Hearing Board finds as follows:

1. The Petitioner's objections to the testimony of Lisa Naslund, and Nathan Merrick are overruled;

2. The LEA has acted in accordance with law and regulation in the classification of the C&D material as waste deposited on the land and the issuance of the Order. Therefore, the Petitioner's appeal is denied.

## RIGHT TO APPEAL

Petitioner has the right to appeal this decision to CalRecycle in accordance with California Public Resources Code section 45030.

Dated: November _9_, 2018

Christopher Salomon, Chair

Wayne Tsuda, Member

Steven Samaniego, Member

# EXHIBIT "E"

**CERTIFIED COPY**

LOS ANGELES COUNTY DEPARTMENT OF PUBLIC HEALTH

SOLID WASTE MANAGEMENT PROGRAM

AS THE LOCAL ENFORCEMENT AGENCY (L.E.A.)


IN THE MATTER OF:                    )
                                     )
                                     )
12051 BROWNS CANYON RD.              )
                                     )
CHATSWORTH, CALIFORNIA 91311         )
                                     )
A.P.N.:  2821-019-039.               )
                                     )
                                     )
                                     )
                                     )
_____)


REPORTER'S TRANSCRIPTION OF HEARING

TUESDAY, NOVEMBER 6, 2018

8:59 A.M. - 11:30 A.M.


5050 COMMERCE DRIVE, ROOM 171
BALDWIN PARK, CA 91706


REPORTED BY:  LAURA D. GUERRERO, CSR NO. 7684



EXCEL COURT REPORTERS

12340 Seal Beach Boulevard, Suite B-376, Seal Beach, CA 90740 (562) 989-3499

1  APPEARANCES:

2

3  THE SOLID WASTE FACILITIES HEARING BOARD:

4          CHRISTOPHER R. SALOMON, THE CHAIRPERSON
           WAYNE TSUDA, A BOARD MEMBER
5          STEVEN L. SAMANIEGO, A BOARD MEMBER

6

7  FOR THE SOLID WASTE FACILITIES HEARING BOARD
   COUNTY OF LOS ANGELES:
8
           OFFICE OF THE COUNTY COUNSEL
9          COUNTY OF LOS ANGELES
           BY:   JULIA C. WEISSMAN
10               SENIOR DEPUTY COUNTY COUNSEL
           500 WEST TEMPLE STREET
11         SIXTH FLOOR
           LOS ANGELES, CALIFORNIA 90012
12         (213) 974-1951

13

14  FOR THE LOCAL ENFORCEMENT AGENCY:

15         FORD, WALKER, HAGGERTY & BEHAR, LLP
           BY:   RENEE E. JENSEN
16               ATTORNEY AT LAW
           ONE WORLD TRADE CENTER
17         27TH FLOOR
           LONG BEACH, CALIFORNIA 90831
18         (562) 983-2500

19

20  FOR APPELLANT AND PETITIONER ANDREA MURRAY:

21         D'ATTARAY LAW
           BY:   MAINAK D'ATTARAY
22               ATTORNEY AT LAW
           111 WEST OCEAN BOULEVARD
23         SUITE 400
           LONG BEACH, CALIFORNIA 90802
24         (424) 703-5294

25

                                                    2

```
1   APPEARANCES (CONTINUED)

2

3   ALSO PRESENT:

4
            ANDREA MURRAY
5           JOHN BOLLINGER
            DORCAS HANSON-LUGO
6           NATHAN MERRICK
            ERIC MOROFUJI
7           SHIKARI NAKAGAWA-OTA
            JEANNE BIEHLER
8           OSCAR CASTILLO
            LISA NASLUND
9           JOSEPH PRIEBE
            DUY TAM NGUYEN
10          JANET GALLARDO

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                          I N D E X


2


3                          WITNESSES

4    WHEREUPON, THE FOLLOWING WITNESSES WERE SWORN IN AND
              SPOKE AT VARYING TIMES IN THE HEARING:
5
                          ANDREA MURRAY
6                        JOHN BOLLINGER
                         NATHAN MERRICK
7                         ERIC MOROFUJI
                     SHIKARI NAKAGAWA-OTA
8                       OSCAR CASTILLO
                         LISA NASLUND
9                        JOSEPH PRIEBE

10

11

12

13                       E X H I B I T S

14                          (NONE)

15

16

17

18

19

20

21

22

23

24

25

                                                          4

1  TO WHOM?

2          MR. D'ATTARAY:  A MASTER PLAN WAS SUBMITTED TO

3  THE STAKEHOLDERS THAT WERE AT THE D.A. OFFICE

4  CONFERENCE.  THERE'S BEEN AN ONGOING PROCESS THROUGH THE

5  DISTRICT ATTORNEY'S OFFICE IN RESOLVING SOME OF THESE

6  COMPLAINTS, INCLUDING THE L.E.A.'S COMPLAINT.

7          BOARD MEMBER SAMANIEGO:  AND THAT'S COVERING

8  THE LAND USE ISSUES?

9          MR. D'ATTARAY:  LAND USE, GRADING, AS WELL AS

10 THE MATERIAL THAT ARE BEING USED.  THE REVISED MASTER

11 PLAN AND/OR THE MASTER PLAN WAS AN EXHIBIT THAT WAS

12 ATTACHED OR UPLOADED TO THE DROPBOX.

13         BOARD MEMBER SAMANIEGO:  BECAUSE I THINK I

14 HEARD FROM THE BUILDING AND SAFETY THAT NO PLANS HAVE

15 BEEN SUBMITTED?

16         MR. D'ATTARAY:  THAT'S A DIFFERENT --

17         BOARD MEMBER SAMANIEGO:  WITH RESPECT TO --

18 WHAT IS THAT, THEN?

19         MR. D'ATTARAY:  THERE WAS A REQUEST THAT WE DO

20 A -- SORT OF MORE DETAILED PLAN AND THAT WE DO -- WE

21 HIRE CERTAIN GEOLOGISTS OR GEOTECHNICAL ENGINEERS TO DO

22 SOME EXCAVATION AND SAMPLING, AND THAT'S SOMETHING WE

23 REFUSED ONLY BECAUSE OF THE PROHIBITIVENESS OF THE COST

24 AND THE INTRUSION, BECAUSE WE HAVE OUR OWN LEGAL

25 POSITION AND THAT'S A SEPARATE DISCRETE MATTER THAT

66

1    WE'RE HANDING WITH THE DEPARTMENT OF PUBLIC WORKS, AND

2    BUILDING AND SAFETY.

3          BOARD MEMBER SAMANIEGO:  I'M HEARING THEIR --

4    THIS EXEMPTION ON THE FARMLAND GRADING, I NEED TO HEAR

5    FROM THE COUNTY BUILDING AND SAFETY, IS THERE SUCH AN

6    EXEMPTION?

7          LISA NASLUND:  YES, THERE'S AN EXEMPTION THAT

8    HE SPOKE OF, THE GRADING IN A SELF-CONTAINED ISOLATED

9    AREA.  THAT IS AN EXEMPTION FOR GRADING.  I WOULD NOT

10   CONSIDER THIS LOCATION AS THAT, REASON BEING THEIR

11   TOPOGRAPHY IS SUCH THAT ALL OF THE -- THE MAJORITY OF

12   THE PROJECT OR PROPERTY DRAINS TOWARDS AN INLET -- ONE

13   INLET AT THE ENTRANCE OF THE DRIVEWAY, SO ALL OF THE

14   PROPERTY DRAINS TO THAT INLET, WHICH GOES UNDER THE ROAD

15   INTO A NATURAL DRAINAGE COURSE; AND IT'S ALSO IN THAT

16   COUNTY FLOODWAY THAT I MENTIONED.  THE OTHER PORTION OF

17   THE PROPERTY DRAINS TO THE VERY SOUTHERNMOST -- I THINK

18   IT WOULD BE THE -- THE SOUTHEAST CORNER OF THE PROPERTY.

19   SO ALL OF IT, BECAUSE IT DRAINS TO ADJACENT PROPERTIES,

20   IT DOES -- IT IS NOT SELF-CONTAINED AND IT DOES NOT --

21   AND IT DOES AFFECT ADJACENT PROPERTIES.

22          IN ADDITION, GRADING --

23          MR. D'ATTARAY:  I WOULD OBJECT TO THIS

24   QUESTIONING CONTINUING BECAUSE, ONE, THIS IS OUR

25   OPPORTUNITY TO ANSWER QUESTIONS.  THEY HAD THEIR

67

1                    REPORTER'S CERTIFICATE

2

STATE OF CALIFORNIA      )
3                        )  SS
COUNTY OF LOS ANGELES   )

4

5

6          I, LAURA D. GUERRERO, A CERTIFIED SHORTHAND

7    REPORTER OF THE COUNTY OF LOS ANGELES, STATE OF

8    CALIFORNIA, DO HEREBY CERTIFY THAT SAID PROCEEDING WAS

9    TAKEN DOWN BY ME IN SHORTHAND AT THE TIME AND PLACE

10   THEREIN NAMED, AND THEREAFTER REDUCED TO PRINT BY MEANS

11   OF COMPUTER-AIDED TRANSCRIPTION UNDER MY DIRECTION, AND

12   THE SAME IS A TRUE, CORRECT, AND COMPLETE TRANSCRIPT OF

13   SAID PROCEEDINGS.

14          DATED THIS 23RD DAY OF NOVEMBER, 2018,

15   SEAL BEACH, CALIFORNIA.

16

17

18   _____
     LAURA D. GUERRERO, CSR 7684

19

20

21

22

23

24

25

99

# EXHIBIT "F"

```
 1              UNITED STATES BANKRUPTCY COURT

 2          CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA

 3                        --oOo--

 4  In Re:                    )  Case No. 1:21-bk-11781-MT
                              )
 5  ANDREA LYNN MURRAY,       )  Chapter 7
                              )
 6  Debtor,                   )  Santa Ana, California
                              )  December 22, 2021
 7  -----------------------------)

 8

 9         TRANSCRIPT OF CONTINUED TELEPHONIC 341(A)
                  MEETING OF CREDITORS
10         BEFORE NANCY ZAMORA, CHAPTER 7 TRUSTEE

11

12  APPEARANCES:

13  For the Debtor:          NICHOLAS W. GEBELT, ESQ.
                             15150 Hornell Street
14                           Whittier, California  90604

15  For the County of Los    JACQUELYN CHOI, ESQ.
    Angeles:                 Rimon, P.C.
16                           2029 Century Park East
                             Suite #400N
17                           Los Angeles, California  90067

18                           RENEE ERIKA JENSEN, ESQ.
                             Ford Walker
19                           1 World Trade Center
                             Floor 27
20                           Long Beach, California  90831

21  For Patrick Flannery:    RAYMOND H. AVER, ESQ.
                             Law Offices of Raymond Aver, P.C.
22                           10801 National Boulevard
                             Suite #100
23                           Los Angeles, California  90064

24
    Proceedings produced by electronic sound recording;
25  transcript produced by transcription service.
```



P 888.272.0022  F 818.343.7119     www.benhyatt.com

```
 1   For Himself:                PHILIP KAUFLER, ESQ.
                                 8383 Wilshire Boulevard #830
 2                               Beverly Hills, California  90211

 3   Court Transcriptionist:     Ruth Ann Hager, C.E.T.**D-641
                                 Ben Hyatt Certified Deposition
 4                                  Reporters
                                 17835 Ventura Boulevard, Suite 310
 5                               Encino, California  91316

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



Page                                                                29

1      Q.   And that was for decomposed granite.  You have an

2  estimate of how many truckloads total were imported onto

3  the property between May of 2017 and 2019?

4      A.   It would have been whatever the first amount was.

5  I think it was 134, plus sides.  Would have been 139.

6      Q.   And were you paid for allowing any of the

7  truckloads of material to be imported onto your property?

8      A.   No.

9      Q.   Was it all -- you mentioned before that somebody

10  exchanged work for allowing materials to be brought on the

11  property.  Was that the arrangements for all the truckloads

12  of proper -- of materials?

13      A.   Yes, it was.

14      Q.   So the LEA, my client, issued a notice of

15  violation to you as the property owner of the Browns Canyon

16  property on June 6th of 2017 for illegal disposal of

17  construction and demolition materials, correct?

18      A.   I'm sorry.  That was June 6th of?

19      Q.   2017.

20      A.   2017.  Yes, I believe that's correct.

21      Q.   And the notice of violation directed you to

22  remove the construction and demolition material from the

23  property and properly dispose of it, is that correct?

24      A.   Yes.

25      Q.   Did you remove those materials?



Page                                                                                      30

1       A.    That was the subject of the appeal that we had
2    pending because of --
3       Q.    So that's a no.
4       A.    -- we --
5       Q.    Is that a no?
6       A.    It's a no.  We --
7       Q.    Is that --
8       A.    -- did.
9       Q.    In fact, you continued to import additional
10   materials after the June 6, 2017 notice of violation, is
11   that correct?
12      A.    Yes.  I --
13      Q.    And then on January 12 of 2018 the LEA issued a
14   cease and desist and corrective action order directing you
15   to immediately cease importing solid waste, remove it
16   within 30 days and provide receipt to document proper
17   removal.  Is that correct?
18      A.    That's correct.
19      Q.    And you requested an appeal of that January 12,
20   2018 cease and desist order, is that correct?
21      A.    We had an appeal and we also had a stay.
22      Q.    Okay.  So yes or no, you did -- you requested an
23   appeal at the January 12, 2018 cease and desist order?
24      A.    Yes.
25      Q.    Yes.  And there was a hearing before the Los



Page                                                                        57

1          MS. JENSEN:  Outside counsel, yeah.

2          MR. KAUFLER:  Yeah.  All right.  Thank you.  I

3    have nothing further.

4          MS. ZAMORA:  Great.  This meeting is concluded.

5    If there are documents that I'm allowed to distribute,

6    Mr. Gebelt, I will wait for your directive with regard to

7    that and confirmation by an email cc'ing the parties

8    involved.  If not, I will leave it to all of you to

9    exchange  documents or take action necessary to obtain

10   documents.

11         MR. GEBELT:  Okay.  I will confer with my client

12   and then get back to you.

13         MS. ZAMORA:  Thank you very much, everyone.

14   Happy holidays, goodbye.

15         PARTIES:  Thank you.

16                    * * * * * * * *

17         I certify that the foregoing is a correct

18   transcript from the electronic sound recording of the

19   proceedings in the above-entitled matter.

20

21   *Ruth Ann Hager*

22   _____         Date:  2/11/22

23   RUTH ANN HAGER, C.E.T.**D-641

24

25



# EXHIBIT "G"

1  Jacquelyn H Choi (SBN 211560)
   RIMON, P.C.
2  2029 Century Park East, Suite 400N
   Los Angeles, California 90067-2905
3  Telephone: (310) 525-5859
   Facsimile: (310) 525-5859
4  Email: jacquelyn.choi@rimonlaw.com

5  Attorneys for Plaintiffs, **THE PEOPLE OF THE
   STATE OF CALIFORNIA,** by and through
6  **GEORGE GASCÓN,** Los Angeles County
   District Attorney, **COUNTY OF LOS ANGELES**
7  and **LOS ANGELES COUNTY DEPARTMENT
   OF PUBLIC HEALTH ACTING AS THE
8  LOCAL ENFORCEMENT AGENCY**

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11             **SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| 12  In re | Case No. 1:21-bk-11781-MT |
| 13  ANDREA LYNN MURRAY, | Chapter 7 |
| 14       Debtor. | |
| 15 | |
| 16  THE PEOPLE OF THE STATE OF CALIFORNIA, by and through GEORGE | Adv No. 1:22-ap-01010-MT |
| 17  GASCÓN, Los Angeles County District Attorney, COUNTY OF LOS ANGELES and | |
| 18  LOS ANGELES COUNTY DEPARTMENT OF PUBLIC HEALTH ACTING AS THE | **PLAINTIFF LOS ANGELES COUNTY DEPARTMENT OF PUBLIC HEALTH** |
| 19  LOCAL ENFORCEMENT AGENCY, | **ACTING AS THE LOCAL ENFORCEMENT AGENCY'S FIRST** |
| 20       Plaintiffs, | **REQUEST FOR ADMISSIONS** |
| 21       v. | |
| 22  ANDREA LYNN MURRAY, and DOES 1-10; | |
| 23       Defendants. | |
| 24 | |
| 25 | |
| 26 | |

27

28

1

| | | |
|---|---|---|
| 1 | REQUESTING PARTY: | Plaintiff LOS ANGELES COUNTY DEPARTMENT OF PUBLIC |
| 2 | | HEALTH ACTING AS THE LOCAL ENFORCEMENT AGENCY |
| 3 | | ("**Plaintiff**") |
| 4 | RESPONDING PARTY: | Defendant ANDREA LYNN MURRAY ("**Defendant**") |
| 5 | REQUEST NUMBER: | ONE |

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, made applicable herein pursuant to Rule 7036 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Plaintiff hereby requires that the Defendant respond to the following request for admissions under oath, fully and completely, within thirty (30) days of the service hereof, or within which other time as the Bankruptcy Rules allow.

**PRELIMINARY STATEMENT**

1.  As used in these Request For Admissions (the "**Requests**"), the following words and terms have the same meanings respectively indicated:

    a.  The term "writing" has the same scope and definition that it has under Rule 1001(1) of the Federal Rules of Evidence.

2.  In answering these Requests, it is required that you provide information that is known or available to you, to your attorneys, or to any investigators, employees, agents or other persons serving you or your attorneys.  Reasonable investigation is required of you to provide a complete response.  If, after making such an investigation, or having one made, you are still unable to respond fully, you are required to answer the request to the extent possible, and further, to explain what investigative steps were undertaken and how and why you are unable to provide a complete answer.

3.  A request that you identify an oral communication calls for the following information:

    a.  The date, time and place it occurred;

    b.  Whether it was by telephone or face to face;

2

1    c.    The identities, per the Preliminary Statement, of all persons present when it

2         occurred; and

3    d.    What was said by each person present, either as part of the oral communication, or as

4         a reaction to some part of it.

5    4.    Throughout these Requests, the use of the masculine, feminine or neuter is to be

6    understood to include each of the others where necessary for a reasonable understanding of the

7    requests.  Similarly, the use of the plural is to be understood to include the singular, and vice versa.

8    5.    These Requests are to be regarded as continuing. If, at any time subsequent to the

9    service of your answers to these Requests, you, or anyone acting on your behalf, becomes aware of

10   additional information which in any way can be said to supplement or otherwise modify and of

11   those answers, you are required to provide that information to the Plaintiff's attorney in the form of

12   supplemental answers to these Requests which specify the answers which would be affected

13   thereby, as well as the modified answers.  Your supplemental answers must be served within thirty

14   (30) days of the discovery of the information giving rise to them.

15                              **<u>DEFINITIONS</u>**

16   1.    The term **DEBTOR** or **DEFENDANT** refers to ANDREA LYNN MURRAY, an

17   individual.

18   2.    The terms **PETITION DATE** refer to October 27, 2021.

19   3.    The term **PLAINTIFF** refers to LOS ANGELES COUNTY DEPARTMENT OF

20   PUBLIC HEALTH ACTING AS THE LOCAL ENFORCEMENT AGENCY.

21   4.    The term **PEOPLE** refers to the Plaintiff, The People of the State of California.

22   5.    The term **FLANNERY** refers to Patrick Flannery.

23   *6.*    The term **COMPLAINT** refers to the *Complaint for Determination of Non-*

24   *Dischargeability of Debts Pursuant to 11 U.S.C.* §§ 523(a)(6) and 523(a)(7) filed on February 4,

25   2022 [Adv. Docket No. 1].

26   7.    The term **PROPERTY** refers to 12051 Browns Canyon Road, Chatsworth,

27

28                              3

California 91311.

8.     The term **REGIONAL PLANNING** refers to Los Angeles County Department of Regional Planning.

9.     The term **PUBLIC WORKS** refers to Los Angeles County Department of Public Works.

10.    The term **CRIMINAL ACTION** refers to the action commenced by the PEOPLE on February 15, 2019 asserting twelve (12) misdemeanor counts against DEFENDANT for her building, electrical and zoning code violations in the Los Angeles County Superior Court for the State of California (Case No. SC05143).

11.    The term **CEASE AND DESIST ORDER** refers to the PLAINTIFF's *Cease and Desist Order* issued to the DEFENDANT On January 12, 2018 ordering the DEFENDANT to immediately cease and desist operations, including, the import, delivery and disposal of all solid waste, and remove within thirty (30) days, all the construction and debris material ("C&D") from the PROPERTY to a permitted solid waste facility.

12.    The term **FIRST APPEAL** refers to the DEFENDANT's appeal of the CEASE AND DESIST ORDER with the Los Angeles County Solid Waste Facilities Hearing Board (the "Hearing Board").

13.    The term **SECOND APPEAL** refers to DEFENDANT'S appeal commenced on November 21, 2018 with respect to the Hearing Board's decision concluding that PLAINTIFF acted in accordance with law and regulation in the classification of the C&D as waste deposited on the PROPERTY and the issuance of the CEASE AND DESIST ORDER.

14.    The **FINES AND PENALTIES** refer to the PLAINTIFF's fines, penalties, sanctions, code enforcement fees, administrative penalty assessments and/or any other monetary damages in connection with and/or arising under or related to the CEASE AND DESIST ORDER which continues to accrue at a rate of up to $5,000.00 per day.

4

## REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:**

Admit that you possess a fifty percent (50%) ownership interest in the PROPERTY.

**REQUEST FOR ADMISSION NO. 2:**

Admit that FLANNERY owns fifty percent (50%) of the PROPERTY.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the PROPERTY requires restoration both before and after the PETITION DATE in order to bring it into compliance with State solid waste regulations.

**REQUEST FOR ADMISSION NO. 4:**

Admit that on or around June 6, 2017, the PLAINTIFF issued DEFENDANT a Notice of Violation for illegally disposing of C&D on the PROPERTY whereby DEFENDANT was directed to remove the C&D and properly dispose of it.

**REQUEST FOR ADMISSION NO. 5:**

Admit that on or around January 12, 2018, the PLAINTIFF issued the CEASE AND DESIST ORDER.

**REQUEST FOR ADMISSION NO. 6:**

Admit that prior to the PETITION DATE, the DEFENDANT was ordered to stop all commercial waste dumping and submit applications for permits to PUBLIC WORKS, REGIONAL PLANNING and/or PLAINTIFF.

**REQUEST FOR ADMISSION NO. 7:**

Admit that with respect to the FIRST APPEAL, the Hearing Board concluded that DEFENDANT acted in accordance with law and regulation in the classification of the C&D as waste deposited on the land and the issuance of the CEASE AND DESIST ORDER.

5

**REQUEST FOR ADMISSION NO. 8:**

Admit that with respect to SECOND APPEAL, on October 4, 2023, the hearing officer of California Department of Resources Recycling and Recovery upheld, in full, the CEASE AND DESIST ORDER.

**REQUEST FOR ADMISSION NO. 9**:

Admit that the DEFENDANT did not commence an appeal within thirty (30) days of the SECOND APPEAL and as such, this decision is final pursuant to California Public Resources Code § 45040(a).

**REQUEST FOR ADMISSION NO. 10:**

Admit that with respect to the CRIMINAL ACTION, on or around November 3, 3022, after a retrial, the jury reached verdicts finding the DEFENDANT guilty of misdemeanor Counts 1 (*Unpermitted Grading*) and 4 (*Improperly Placing Fill Material*).

**REQUEST FOR ADMISSION NO. 11:**

Admit that on or around December 8, 2022, the criminal court in the CRIMINAL ACTION sentenced the DEFENDANT on both convictions by imposing various fines and/or community labor.

**REQUEST FOR ADMISSION NO. 12:**

Admit that pursuant to California Public Resources Code § 45011, the PLAINTIFF has the authority to impose administrative penalties for the DEFENDANT's violation of the CEASE AND DESIST ORDER at a rate of up to $5,000.00 per day, beginning on February 12, 2018 to the present because the violation has not been abated.

**REQUEST FOR ADMISSION NO. 13:**

Admit that the PLAINTIFF's FINES AND PENALTIES are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

**REQUEST FOR ADMISSION NO. 14:**

Admit that the PLAINTIFF's FINES AND PENALTIES are non-dischargeable pursuant to 11 U.S.C. § 523(a)(7).

6

**REQUEST FOR ADMISSION NO. 15:**

Admit that you were an individual DEBTOR as of the PETITION DATE.

**REQUEST FOR ADMISSION NO. 16:**

Admit that DEFENDANT acted with willful and malicious injury to another entity or to the property of another entity when DEFENDANT caused solid waste or C&D to be imported, delivered and/or disposed of onto the PROPERTY.

**REQUEST FOR ADMISSION NO. 17:**

Admit that C&D can be harmful to the environment, underground water table, plant life, mammals, fish and/or bird life.

**REQUEST FOR ADMISSION NO. 18:**

Admit that by DEFENDANT's illegal operation of the DEFENDANT's unpermitted waste dump over an extended period of time and by failing to take corrective action, the DEFENDANT caused damage to the land in the unincorporated community of Oat Mountain.

**REQUEST FOR ADMISSION NO. 19:**

Admit that by DEFENDANT's violation of State law and the CEASE AND DESIST ORDER, the DEFENDANT caused damage to the public health, safety and welfare.

**REQUEST FOR ADMISSION NO. 20:**

Admit that the FINES AND PENALTIES constitute a "fine", "penalty" or "forfeiture" under 11 U.S.C. § 523(a)(7).

**REQUEST FOR ADMISSION NO. 21:**

Admit that the FINES AND PENALTIES are payable to and for the benefit of the PLAINTIFF.

**REQUEST FOR ADMISSION NO. 22:**

Admit that the PLAINTIFF is a "governmental unit", as defined under Section 101(27) of the Bankruptcy Code.

7

**REQUEST FOR ADMISSION NO. 23:**

Admit that the FINES AND PENALTIES shall not serve to advance the PLAINTIFF's pecuniary interests, but rather, to benefit the public welfare by penalizing the DEFENDANT'S past unlawful conduct and deter future wrongdoing.

**REQUEST FOR ADMISSION NO. 24:**

Admit that the FINES AND PENALTIES do not constitute "compensation for actual pecuniary loss", as those terms are described in Section 523(a)(7) of the Bankruptcy Code.


Dated: October 17, 2024                              **RIMON, P.C.**


By: _____
Jacquelyn H. Choi
Attorneys for Plaintiffs, THE PEOPLE OF
THE STATE OF CALIFORNIA, by and
through GEORGE GASCÓN, Los Angeles
County District Attorney, COUNTY OF LOS
ANGELES AND LOS ANGELES COUNTY
DEPARTMENT OF PUBLIC HEALTH
ACTING AS THE LOCAL ENFORCEMENT
AGENCY

8

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

800 Oak Grove Avenue, Suite 250, Menlo Park, CA 94025

A true and correct copy of the foregoing document entitled (*specify*):  PLAINTIFF LOS ANGELES COUNTY
DEPARTMENT OF PUBLIC HEALTH ACTING AS THE LOCAL ENFORCEMENT AGENCY'S FIRST REQUEST FOR
ADMISSIONS

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)   10/17/2024   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Andrea Lynn Murray, and DOES 1-10
PO Box 3155
Chatsworth, CA 91313

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)   10/17/2024   , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

BY EMAIL: Andrea Lynn Murray (bcr2003@aol.com)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/17/2024 | May Choi | /s/ May Choi |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "H"

Andrea L. Murray
Self-Represented Defendant
12051 Browns Canyon Rd
Chatsworth, CA 91311
P.O. Box 3155
Chatsworth, CA 91313
Mobile 818.456.0560
Email bcr2003@aol.com

Self-Represented Defendant

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re | **Case No. 1:21-bk-11781-MT** |
| ANDREA LYNN MURRAY, | **Chapter 7** |
| Debtor. | |
| | **Adv No. 1:22-ap-01010-MT** |
| THE PEOPLE OF THE STATE OF CALIFORNIA, by and through GEORGE GASCÓN, Los Angeles County District Attorney, COUNTY OF LOS ANGELES and LOS ANGELES COUNTY DEPARTMENT OF PUBLIC HEALTH ACTING AS THE LOCAL ENFORCEMENT AGENCY, | **DEFENDANT ANDREA L. MURRAY'S RESPONSE TO REQUESTS FOR ADMISSIONS SET ONE** |
| Plaintiffs, | |
| v. | |
| ANDREA LYNN MURRAY, and DOES 1-10; | |
| Defendants. | |

REQUESTING PARTY:    PLAINTIFF LOS ANGELES COUNTY
DEPARTMENT OF PUBLIC HEALTH
ACTING AS THE LOCAL
ENFORCEMENT AGENCY

1

RESPONDING PARTY:      ANDREA L. MURRAY
SET:                              ONE

The RESPONDING PARTY ANDREA L. MURRAY hereby responds to the REQUESTING PARTY, LOS **ANGELES COUNTY DEPARTMENT OF PUBLIC HEALTH ACTING AS THE LOCAL ENFORCEMENT AGENCY'S** Special Interrogatories as follows:

**RESPONSE TO ADMISSION NO. 1:**

**Admit.**

**RESPONSE TO ADMISSION NO. 2:**

**Admit.**

**RESPONSE TO ADMISSION NO. 3:**

**OBJECTION; Responding Party objects on the grounds** that it calls for speculation, legal conclusions, and expert opinions and analyses. Responding Party also objects on the ground that this matter is part of the Self Represented Defendant's work product. Defendant has not completed her investigation and discovery of the facts is still ongoing in this matter. Respectfully, Responding Party reserves the right to supplement these responses at trial.

Subject to and without waiving these objections, and to the extent that Responding Party understands this request, she responds as follows:

Although Plaintiffs have been very forthcoming as to their amount of alleged damages, they have not been forthcoming with information as the remedial work that needs to be done, in order to meet their "compliance requirements.". Therefore, Responding Party denies.

**RESPONSE TO ADMISSION NO. 4:**

**Admit.**

**RESPONSE TO ADMISSION NO. 5;**

**Admit.**

**RESPONSE TO ADMISSION NO. 6**

**OBJECTIONS; Defendant objects on the grounds that this request is vague and ambiguous and is overbroad in that it refers to Defendant being ordered to submit "applications for permits" without specificity.**

2

Subject to and without waiving these objections, and to the extent that Responding Party understands this request, she responds as follows:

**Defendant admits that the Plaintiffs' tried to strong arm her into applying for permits that the engineer and architect she hired, said she did not need. Defendant denies that she was operating a commercial waste dump.**

**RESPONSE TO ADMISSION NO. 7**

**Admit.**

**RESPONSE TO ADMISSION NO. 8**

**Admit.**

**RESPONSE TO ADMISSION NO. 9**

**Admit.**

**RESPONSE TO ADMISSION NO. 10**

**Admit.**

**RESPONSE TO ADMISSION NO. 11**

**Admit.**

**RESPONSE TO ADMISSION NO. 12**

**OBJECTION;** Responding Party objects on the grounds that it calls for speculation, legal conclusions, and Self Represented Defendant's work product. Defendant has not completed her investigation and discovery of the facts is still ongoing in this matter. Respectfully, Responding Party reserves the right to supplement these responses at trial.

Subject to and without waiving these objections, and to the extent that Responding Party understands this request, Defendant responds as follows:
Responding Party was not operating an unpermitted dumpsite on her large 13.3 acre property, which is zoned for heavy agricultural use. Large acre parcels require constant maintenance which requires the use of clean, in-ert materials such as Decomposed Granite and Topsoil. However, since October of 2018, Defendant has not ordered nor received any materials what-so-ever and therefore, Responding Party answers denies.

**RESPONSE TO ADMISSION NO. 13**

3

1    **Deny. Defendant's actions were not WILLFUL AND MALICIOUS.**

2    **RESPONSE TO ADMISSION NO. 14**

3    **OBJECTION;** Responding Party objects on the grounds that it calls for speculation, legal
4    conclusions, and Self Represented Defendant's work product. Defendant has not completed her
     investigation and discovery of the facts is still ongoing in this matter. Respectfully, Responding
5    Party reserves the right to supplement these responses at trial.
     Subject to and without waiving this objection, and to the extent that Responding Party  understands
6    this request, Defendant responds as follows:

7    Responding Party denies on the basis that if could be "**compensation for actual pecuniary
     loss**".

8

9    **RESPONSE TO ADMISSION NO. 15**

10   **Admit.**

11   **RESPONSE TO ADMISSION NO. 16**

12   **Deny. Defendant's behavior was not Willful and Malicious.**

13   **RESPONSE TO ADMISSION NO. 17**

14   **OBJECTION: Responding Party objects on the grounds that the request is vague and
     ambiguous.** Subject to and without waiving this objection, and to the extent that Responding Party
15   understands this request, Responding Party responds as follows:

16   Responding Party denies on the basis that certain types of in-ert materials, that are classified as
     C&D, are actually beneficial to the environment, underground water table, plant life, mammals, fish
17   and/or bird life.

18   **RESPONSE TO ADMISSION NO. 18**

19   **Deny. Defendant was not operating an unpermitted waste dump.**

20   **RESPONSE TO ADMISSION NO. 19**

21   **Deny. Defendant's actions benefitted the public health, safety and welfare.**

22   **RESPONSE TO ADMISSION NO. 20**

23   **OBJECTION;** Responding Party objects on the grounds that it calls for speculation, legal
     conclusions, and Self Represented Defendant's work product. Defendant has not completed her
24   investigation and discovery of the facts is still ongoing in this matter. Respectfully, Responding
     Party reserves the right to supplement these responses at trial.
25

26   Subject to and without waiving this objection, and to the extent that Responding Party  understands
     this request, Defendant responds as follows:

27
                                              4
28

Responding Party denies on the basis that if could be considered "**compensation for actual pecuniary loss".**

**RESPONSE TO ADMISSION NO. 21**

**OBJECTION;** Responding Party objects on the grounds that this request is vague and ambiguous, as it refers to "Plaintiffs" and it calls for speculation, legal conclusions, and Self Represented Defendant's work product. Defendant has not completed her investigation and discovery of the facts is still ongoing in this matter. Respectfully, Responding Party reserves the right to supplement these responses at trial.

Subject to and without waiving this objection, and to the extent that Responding Party understands this request, Defendant responds as follows:

Responding Party denies on the basis that agreements were reached with some of the Plantiffs and their claims were settled by way of stipulated judgment.

**RESPONSE TO ADMISSION NO. 22**

Responding Party objects on the grounds that this request is vague and ambiguous, as it refers to "Plaintiffs" and it calls for speculation, legal conclusions, and Self Represented Defendant's work product. Defendant has not completed her investigation and discovery of the facts is still ongoing in this matter. Respectfully, Responding Party reserves the right to supplement these responses at trial.

Subject to and without waiving this objection, and to the extent that Responding Party understands this request, Defendant responds as follows:

Responding Party denies on the basis that agreements were reached with some of the Plantiffs and their claims were settled by way of stipulated judgment.

**RESPONSE TO ADMISSION NO. 23**

**OBJECTION;** Responding Party objects on the grounds that it calls for speculation, legal conclusions, and Self Represented Defendant's work product. Defendant has not completed her investigation and discovery of the facts is still ongoing in this matter. Respectfully, Responding Party reserves the right to supplement these responses at trial.

Subject to and without waiving this objection, and to the extent that Responding Party understands this request, Defendant responds as follows:

Responding Party denies on the basis that if could be considered "**compensation for actual pecuniary loss".**

**RESPONSE TO ADMISSION NO. 24**

5

1
2

**OBJECTION;** Responding Party objects on the grounds that it calls for speculation, legal conclusions, and Self Represented Defendant's work product. Defendant has not completed her investigation and discovery of the facts is still ongoing in this matter. Respectfully, Responding Party reserves the right to supplement these responses at trial.

3
4

Subject to and without waiving this objection, and to the extent that Responding Party understands this request, Defendant responds as follows:

5

Responding Party denies on the basis that if could be considered "**compensation for actual pecuniary loss".**

6

7
8

Responding Party has not completed her investigation and discovery of the facts is still ongoing in this matter More discovery, legal research, and analysis may supply additional information. Respectfully, Responding Party reserves the right to supplement these responses at trial.

9

10

I declare under penalty of perjury under the laws of the State of California that the foregoing

11

answers are true and correct.

12

13      Dated: November 30th, 2024                    **ANDREA L. MURRAY**

14

15                                                By: _____

16                                                    Andrea L. Murray
                                                      Pro Se Defendant

17

18

19

20

21

22

23

24

25

26

27
                                        6
28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
800 Oak Grove Avenue, Suite 250, Menlo Park, CA 94025

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF FACTS; MEMORANDUM OF POINTS AND
AUTHORITIES; AND DECLARATION OF KAREN GORK IN SUPPORT THEREOF**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
May 6, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**United States Trustee: ustpregion16.wh.ecf@usdoj.gov
Chapter 7 Trustee: Nancy J. Zamora, zamora3@aol.com, nzamora@ecf.axosfs.com
Other Parties in Interest: Raymond H. Aver, ray@averlaw.com,
averlawfirm@gmail.com; ani@averlaw.com; kayta@averlaw.com; jesus@averlaw.com**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary
proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage
prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be
completed no later than 24 hours after the document is filed.

**Andrea Lynn Murray, and DOES 1-10
PO Box 3155
Chatsworth, CA 91313**

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) May 6, 2025, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.
**VIA OVERNIGHT MAIL
Honorable Maureen A. Tighe
United States Bankruptcy Court
Central District of California
21041 Burbank Blvd, Suite 324/Courtroom 302
Woodland Hills, CA 91367**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 6, 2025 | Jenny Houston | */s/ Jenny Houston* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.